J-S31030-17

2017 PA Super 177

| | | |
|---|---|---|
| IN THE INTEREST OF D.F., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.S., NATURAL MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 163 WDA 2017 |

Appeal from the Order October 6, 2016
In the Court of Common Pleas of Indiana County
Orphans' Court Division at No(s): 32-16-0393

BEFORE: PANELLA, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

OPINION BY DUBOW, J.:                                                    **FILED JUNE 07, 2017**

S.S. ("Mother") appeals from the Order entered by the Indiana County Court of Common Pleas on October 6, 2016, terminating her parental rights with respect to D.F. (d/o/b August 2015) ("the Child").[1]  After careful review, we affirm.

We have gleaned the following salient facts from the certified record. The day after the Child's birth, hospital staff contacted the Indiana County Children and Youth Services due to Mother's history with CYS and her hostile and uncooperative behavior with hospital personnel.  When CYS arrived at the hospital, Mother admitted to the caseworker that she had used prescribed medications against doctor's recommendations throughout her pregnancy.  She then refused to submit to a drug screening.  A psychiatric

_____

[1] The Child's father is deceased.

evaluation conducted in the hospital revealed that Mother was at high risk for drug and alcohol addiction.

After the hospital discovered THC[2] in the Child's umbilical cord, CYS obtained a Protective Custody Order. The court granted custody of the Child to CYS on August 21, 2015, and CYS placed the Child in a licensed foster care home upon discharge from the hospital.

On September 3, 2015, the court adjudicated the Child dependent, with a goal of return to parent.[3] *See* Trial Ct. Op., dated 11/7/16 at 1. The court developed a family service plan and ordered Mother to complete a parenting assessment, drug and alcohol assessments, and psychological and parental capacity evaluations, and to follow all recommendations from the service providers.

The court held permanency review hearings on December 10, 2015, April 14, 2016, and August 11, 2016. Mother attended the first hearing, but did not attend the subsequent hearings. While Mother did complete a parenting class, and some drug and alcohol treatment, her overall compliance with the Family Service Plan was inconsistent.

_____

[2] Tetrahydrocannabinol is the active ingredient in marijuana. http://medical-dictionary.thefreedictionary.com/THC.

[3] Mother states in her brief that the goal has always been a concurrent goal of reunification and adoption. Mother's Brief at 7.

On August 29, 2016, CYS filed a Petition for Involuntary Termination of Parental Rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).

On October 6, 2016, the day of the hearing on the termination petition, Mother's counsel informed the Orphans' court that Maternal Grandmother had called counsel's office the day before to request a continuance due to Mother's allergies. Counsel thereafter unsuccessfully attempted to contact Mother on a phone number supplied by Maternal Grandmother. Counsel further informed the court that Mother had notice of the termination hearing, and that she and Mother had discussed the upcoming hearing "several times over the course of the last few weeks," but that Mother stopped communicating with counsel and the telephone number counsel had for Mother was disconnected as of two days prior to the hearing. N.T., 10/6/16, at 6. Counsel further stated that she had again attempted to contact Mother from chambers using a phone number supplied by the Maternal Grandmother prior to the hearing, but Mother had not responded.

CYS informed the court that it had sent a car to Mother's house that morning to take her to the termination hearing; however, the driver had knocked on the door for 20 minutes, but no one answered.

The guardian *ad litem* argued for the denial of counsel's continuance request in light of Mother's past non-appearances at important appointments, visits with the Child, and court hearings. ***See id***. at 8.

The trial court denied the motion for the continuance "based upon the representations made with regard to notice to [Mother.]" The hearing proceeded. *Id*.

CYS presented testimony from, *inter alia*, an expert witness, psychologist Carol Hughes, and CYS caseworker Becky McAfoos. Ms. Hughes testified that she had conducted a bonding assessment, and concluded that the Child, while responding well to Mother's affection, has no significant attachment to Mother. Ms. Hughes opined that severing the bond with Mother would not harm the Child. She further testified that the Child is securely attached to his foster/pre-adoptive mother, who provides for his emotional, physical, and medical needs.

Caseworker Ms. McAfoos testified that Mother has not been consistent with mental health services, drug and alcohol treatment, drug testing, or visits with the Child. With respect to Mother's mental health treatment, the court admitted documents showing Mother's failure to utilize the services made available to her as part of her family service plan. Community Guidance Center had discharged her for non-compliance, reporting that she had continued to use substances while in treatment along with medication and refused to follow recommendations. N.T., 10/6/16, at 29. A second provider, Family Counseling Center of Armstrong County, reported that Mother had failed to appear for all five scheduled appointments. Family Psychological Associates, a third provider, reported that Mother completed an evaluation with a psychologist, who determined that Mother has bi-polar

disorder and cannabis use disorder in early remission. However, Mother cancelled all but one session with a therapist.

With respect to Mother's drug and alcohol treatment, Ms. McAfoos testified that after Mother's initial in-patient treatment in October 2015 and for 90 days thereafter, Mother's outpatient attendance at programs was consistent. Thereafter, her attendance dropped off, and she provided diluted urine samples or occasionally refused to provide samples as required by the family service plan. One sample tested positive for THC after the Child's placement. *See id*. at 33-37.

Ms. McAfoos also testified that Mother attended 32 out of 76 scheduled visits with the Child. Mother had reported that various physical ailments prevented her from attending visits. Ms. McAfoos stated that although Mother "had 'moments of progress,' … her periods of consistency never lasted more than four weeks." Trial Ct. Op., dated 11/7/16, at 4; N.T. at 42, 48.

Regarding Mother's bond with the Child, Ms. McAfoos testified that the Child interacts with Mother as if Mother were one of Child's day care workers. She stated that the Child is emotionally bonded with the foster/pre-adoptive mother. Finally, she testified that Mother "is not able to take care of herself, let alone [the Child]." *Id*.

The Child's guardian *ad litem* stated that it would be in the Child's best interest to terminate Mother's parental rights as the record is "very clear

that she has been given ample time and opportunity to try to become a better parent … and she has failed multiple times to do that." *Id*. at 54.

The court granted the Petition and terminated Mother's parental rights on October 6, 2016. Mother timely appealed, and filed a Pa.R.A.P. 1925(b). The trial court filed a Rule 1925(a) Opinion.

In her brief, Mother raises the following three issues:

A. Whether the trial court committed an abuse of discretion in denying Mother's oral motion for a continuance for medical reasons thereby preventing Mother from providing necessary testimony?

B. Did the trial court err in its determination that the Indiana County Children and Youth Social Service Agency sustained its burden of proof by clear and convincing evidence that the statutory standards set forth in 23 Pa.C.S. § 2511(a) had been met?

C. Whether the Indiana County Children and Youth Social Service Agency did not prove by clear and convincing evidence and therefore, the court could not find, that Mother is incapable of providing essential parental care, control, or subsistence necessary for the Child's physical and mental well-being under 23 Pa.C.S. § 2511(b)?

Mother's Brief at 6 (reordered).

In her first issue, Mother asserts that the trial court abused its discretion in denying her request for a continuance because, based on "medical records produced to legal counsel at a later date following the Court's finding," Mother had had bronchial pneumonia on the date of the hearing. *Id*. at 25. She further argues that, had she been at the hearing,

she would have "provided imperative and weighty evidence" to "negate or explain some of the allegations of the Agency." *Id*. at 26.

The matter of granting or denying a continuance is within the discretion of the trial court. *Commonwealth v. Sandusky*, 77 A.3d 663, 671 (Pa. Super. 2013) (citing *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)); *Matter of Adoption of S.B.B.*, 539 A.2d 883, 884 (Pa. Super. 1988) (noting that in the absence of Adoption Act provision mandating parental attendance at termination hearings, the grant or denial of a continuance is within the discretion of the trial court). Appellate courts will not disturb a trial court's determination absent an abuse of discretion. "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the results of partiality, prejudice, bias, or ill-will." *In re J.K.*, 825 A.2d 1277, 1280 (Pa. Super. 2003) (citations omitted).

We note initially that neither the Adoption Act nor the cases interpreting it require that a parent must be present in order for a court to grant a Petition to Terminate Parental Rights. The Act merely requires that "[a]t least ten days' notice shall be given to the parent or parents, putative father, or parent of a minor parent whose rights are to be terminated, by personal service or by registered mail to his or their last known address or by such other means as the court may require." 23 Pa.C.S. § 2513(b). *See*

- 7 -

*In re K.B.*, 763 A.2d 436, 440 (Pa. Super. 2000) (finding affidavits of service support trial court's finding that the parents received notice of parental rights termination hearing).

Once a court is satisfied that a parent has received notice of the hearing, it is then entirely within the trial court's discretion to make a ruling on the continuance request based on the evidence before it. As in all matters involving parental rights, the best interests of the child are paramount. Accordingly, the exercise of the trial court's discretion includes balancing the evidence submitted in support of the request against other relevant factors, such as a parent's response and participation, or lack thereof, in prior proceedings and appointments important to the welfare of the child. Most importantly, the trial court is in the best position to factor in the impact that further delay will have on the child's well-being.[4]

Here, it is undisputed that Mother had actual notice of the date and time of the hearing. The Orphans' Court, which had been involved in this case since its inception in August 2015, extensively questioned the attorneys at the termination hearing on October 6, 2016, regarding when Mother received notice of the hearing, whether Mother was aware of the hearing

_____

[4] The trial court's consideration in granting or denying a continuance in a parental rights termination proceeding necessarily will include consideration of the amount of time that will lapse before it is able to schedule another hearing, and the impact that that further delay will have on the child's security and welfare.

date, and whether Mother's own counsel had discussed the date with her. Mother's counsel stated that she had discussed the hearing with Mother several times in the few weeks prior to the hearing date, but in the week leading up to the hearing, she had been unable to reach her client. It is undisputed that Mother had actual notice of the date and time of the hearing. Having concluded that Mother had notice of the proceeding, the court's ruling on the continuation request was entirely within its discretion.

On the morning of the termination proceeding, Mother's counsel had no evidence to support her request for a continuance. The hearsay statement of the maternal grandmother — that Mother's allergies prevented her from attending the hearing — was not only inadmissible, but also a wholly insufficient reason to support a request for a continuance.[5] When the trial court balanced this evidentiary deficiency with Mother's refusal to attend permanency hearings, her refusal to respond to her counsel's calls the week before the hearing, her failure to respond to counsel's calls the morning of the hearing, and CYS's efforts to retrieve Mother from her home to drive her to the court hearing, the trial court's denial of the continuance request was

_____

[5] Mother avers that, because she produced "medical records to legal counsel at a later date" after the termination hearing showing that she had had bronchial pneumonia on the day of the hearing, "based on the totality of the circumstances the trial court abused its discretion" in denying the continuance. Appellant's Brief at 25. The trial court did not abuse its discretion in failing to consider evidence that Mother failed to produce when her counsel requested a continuance.

neither "manifestly unreasonable" nor the result of "partiality, prejudice, bias or ill will." *In re J.K.*, *supra* at 1280. We, thus, conclude that the trial court properly exercised its discretion under the facts of this case.[6]

In her next issue, Mother challenges the sufficiency of the evidence supporting the termination of her parental rights under 23 Pa. C.S. § 2511(a).

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* We may reverse a decision based on an abuse of discretion only upon demonstration of "manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* We may not reverse, however, merely because the record would support a different result. *Id.* at 826-827.

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental

_____

[6] Mother argues in her brief that if the court granted the request for continuance and presumably she appeared at the next hearing date, she would have produced "imperative and weighty evidence as to her medical issues, prescriptions, and drug and alcohol treatment … which would have likely impacted the trial court's decision to terminate her parental rights." Appellant's Brief at 26. This bald assertion has no relevance because the trial court is not required to consider evidence that the Mother failed to produce when her counsel requested a continuance.

rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citations omitted).

We give great deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). The Orphans' Court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). In order to affirm the termination of parental rights, this Court need only agree with any one subsection under Section 2511(a). *See In re B.L.W.* 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

A parent must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent child relationship:

> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004).

Most importantly, "parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with her physical and emotional needs." **Id.**

"Where the parent does not exercise reasonable firmness in declining to yield to obstacles, his parental rights may be forfeited." **In re A.S.**, 11 A.3d 473, 481 (Pa. Super. 2010) (citation omitted). "[A] parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment. A parent cannot protect his parental rights by merely stating that he does not wish to have his rights terminated." **In re B.,N.M., supra** at 856.

Under Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) [that] such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) [that] the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." **In re A.S.**, **supra**, at 479; 23 Pa.C.S. § 2511(a)(2).

This Court has defined "parental duties" in general as the obligation to provide safety, security and stability for the child affirmatively and consistently:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A

child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance. This affirmative duty … requires continuing interest in the child and a genuine effort to maintain communication and association with the child. Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

*In re B., N.M.*, *supra*, at 855 (citations and paragraph breaks omitted).

Significantly, "[t]he pertinent inquiry is not the degree of success a parent may have had in reaching the child, but whether, under the circumstances, the parent has utilized all available resources to preserve the parent-child relationship." *In re Shives*, 525 A.2d 801, 803 (Pa. Super. 1987) (citation omitted).

The trial court addressed Mother's challenge to the sufficiency of the evidence supporting termination as follows:

The testimony and the Exhibits, particularly the Bonding Assessment, demonstrate that Natural Mother [ ] has failed to perform parental duties, and cannot provide the essential care, control, and subsistence to the minor child due to her own daily struggles with mental health and substance abuse issues. Further, these struggles, which led to the removal and placement of the child still exist, and [Mother] has clearly demonstrated that her mental health and substance abuse issues cannot or will not be remedied. Finally it is clear to this Court that "the developmental, physical and emotional needs and welfare of the [C]hild would best be served by terminating" [Mother's] parental rights to the [C]hild.

Trial Ct. Op, dated 11/7/16 at 6.

Our review of the record supports the trial court's findings and conclusions. The Child has lived since birth in August 2015 with the foster/pre-adoptive Mother. The trial court has been involved with the Child's case since August 2015, presiding at each dependency proceeding and permanency review hearing. Thus, at the time of the termination hearing in October 2016, the court was in the best position to review the evidence and determine that Mother's struggles with her physical and mental health, including her drug and alcohol problems, have significantly interfered with her ability to provide essential care of the Child. Mother has not utilized all available resources and has, thus, been unable to remedy her mental health and drug problems. She has failed to exert the required resistance to the obstacles she arguably puts in her own way, and does not appear likely to be able to overcome her obstacles any time soon. She has failed to do what has needed to be done to establish a parent-child relationship with the Child.

The certified record supports the trial court's findings of fact and conclusions of law. We, thus, conclude that the Orphan's Court did not abuse its discretion in concluding that CYS met its burden of proof with respect to Section 2511(a)(2).

We also agree with the Orphans' Court's determination that CYS met its burden under 23 Pa.C.S. § 2511(b), and that terminating Mother's parental rights is in the best interest of the Child.

With respect to Section 2511(b), our analysis shifts focus from parental actions in fulfilling parental duties to the effect that terminating the parental bond will have on the child. Section 2511(b) "focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." *In re: Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court found that "intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, the Orphans' Court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.*

Most significantly, whether a meaningful bond exists is determined, first, by the extent to which a parent provides safety, security, and support for the child's physical and mental needs, on a daily basis. If a meaningful bond is found to exist, the analysis hinges on the extent to which the child will be harmed by the severance of that bond. Thus, the bond-effect analysis necessarily depends on the circumstances of the particular case. *In re K.Z.S.*, 946 A.2d 753, 763 (Pa. Super. 2008). In cases where there is no evidence of meaningful and extensive contact between a parent and a child, it is reasonable to infer that no bond exists. *Id*. at 762-63.

In the instant case, the trial court had the benefit of a formal bond assessment as well as testimony from child welfare professionals. The evidence showed that Mother attended fewer than half of her scheduled visits with the Child. While Ms. McHugh testified that Mother was affectionate with the Child, and the Child responded to Mother's efforts, the evidence showed that Child has a strong bond with the foster/pre-adoptive mother with whom the Child has lived since birth such that termination of Mother's parental rights will not negatively impact the Child.

The certified record supports the trial court's findings of fact and credibility determinations. We discern no error of law and conclude that the trial court properly exercised its discretion in terminating Mother's parental rights.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/7/2017