J-S43030-18 & J-S43031-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF M.A.B. | : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.M.B., JR., NATURAL FATHER | : : | No. 290 WDA 2018 |

Appeal from the Decree January 26, 2018
In the Court of Common Pleas of Erie County Orphans' Court at No(s):
2015-00068

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF N.M.B. | : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.M.B., JR., NATURAL FATHER | : : | No. 291 WDA 2018 |

Appeal from the Decree January 26, 2018
In the Court of Common Pleas of Erie County Orphans' Court at No(s):
68 In Adoption 2015

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF M.A.B. AND N.M.B. | : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: L.J.S.B., NATURAL MOTHER | : : | No. 292 WDA 2018 |

Appeal from the Decree January 26, 2018
In the Court of Common Pleas of Erie County Orphans' Court at No(s):
Nos. 68 and 68A in Adoption 2015

BEFORE:  STABILE, J., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY DUBOW, J.:                    **FILED SEPTEMBER 06, 2018**

In these consolidated appeals, J.M.B., Jr., ("Father") and L.J.S.B. ("Mother") appeal the January 26, 2018 decrees involuntarily terminating their parental rights to their special needs children, M.A.B. and N.M.B (collectively the "Children"). M.A.B. was born in August 2009 and N.M.B. was born a year later, in 2010. Mother and Father have not cared for the Children since 2013, when the Children were three and four. Because the record supports the findings and conclusions of the orphans' court, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

In 2013, Venango Children and Youth Services ("Venango CYS") became involved with the family.  By February 2014, Venango CYS had to place the Children in foster care.  In March 2014, the Venango Court of Common Pleas granted physical and legal custody of the Children to Venango CYS and directed that the Children remain in foster care.  On March 12, 2014, the trial court adjudicated the Children dependent due to Father's continued incarceration, Mother's substance abuse, Mother's mental health status, and poor housing conditions.

Mother moved to Erie County to obtain mental health and substance abuse treatment.  In July 2014, this case was transferred to Erie County Court of Common Pleas and the Erie Office of Children and Youth ("Erie OCY") began working with this family.

On January 26, 2015, when the Children were four and five years old, Erie OCY transferred them to the pre-adoptive foster home where they continue to reside. When the Children moved to their current foster home, neither child was toilet trained and both exhibited behaviors consistent with autism.

In August 2015, Erie OCY filed petitions to involuntarily terminate the parental rights of Mother and Father. Fourteen months later, in October 2016, the orphan's court denied the petitions and Erie OCY appealed. On June 29, 2017, this Court issued an Opinion reversing the trial court, finding that Erie OCY had met its burden that Mother and Father failed to comply with 23 Pa.C.S. 2511(a). *Matter of Adoption of M.A.B.*, 166 A.3d 434, 436-38 (Pa. Super. 2017) (footnotes omitted).[1] However, because the record did not sufficiently address whether CYS met its burden under 23 Pa.C.S. 2511(b), we remanded this case to the trial court for a hearing that addressed whether terminating parental rights would best serve the childrens' needs and welfare. 23 Pa.C.S.A 2511(b).

The orphans' court complied with our directive by holding a hearing on December 7, 2017, and January 24, 2018. At the close of the hearing, the court found that terminating the parental rights of Father and Mother would best serve the Children's needs and welfare pursuant to 23 Pa.C.S. § 2511(b). N.T., 1/24/18, at 203-24. On January 26, 2018, the court entered decrees

---

[1] The author of this memorandum also authored the Court's prior Opinion.

involuntarily terminating the parental rights of Mother and Father. Father and Mother timely filed notices of appeal, along with concise statements of errors complained of on appeal.[2]

**ISSUES ON APPEAL**

Father now raises the following claims for our review:

1. Did the [orphans'] court abuse its discretion amd? [*sic*] and/or commit an error of law when it failed to acknowledge and properly weigh the manifestly unfair circumstances under which the bonding assessment of Dr. von Korff was conducted?

2. Did the [orphans'] court commit an abuse of discretion and/or error of law when it permitted Francine E. Cochis to testify as an expert without voir dire, also did the [orphans'] court fail to properly evaluate her testimony in light of the obvious bias displayed by her towards the foster parents.? [*sic*]

3. Did the [orphans'] court commit an abuse of discretion and/or error of law when it failed to give proper weight to the testimony [*sic*] Rusty Weingard, MEd, a family based mental health specialist, who spent extensive time with the biological parents and children?

---

[2] The orphans' court entered four decrees, including one decree terminating each parents' rights to each child. Our review of the record indicates that Mother filed one notice of appeal from both decrees terminating her parental rights. We caution Mother that the correct procedure in this circumstance is to file separate notices of appeal for each decree. *See* Pa.R.A.P. 341, Note ("Where . . . one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed."). In a recent case, our Supreme Court held that the failure file separate notices of appeal from an order resolving issues on more than one docket "requires the appellate court to quash the appeal." ***Commonwealth v. Walker***, 185 A.3d 969, 977 (Pa. 2018). However, the Court clarified that it would apply its holding only "in future cases," because of decades of prior case law that seldom quashed appeals for that reason, and because the citation to case law contained in the note to Rule 341 was unclear. ***Id.*** Thus, because Mother filed her notice of appeal prior to the filing of our Supreme Court's decision in ***Walker***, on June 1, 2018, we do not quash her appeal.

Father's Brief at 4 (unnecessary capitalization omitted).

Mother raises the following additional claims:

A. Whether the [o]rphans' [c]ourt committed an abuse of discretion and/or error of law when it concluded that [Erie OCY] had established, by clear and convincing evidence, the grounds for termination pursuant to 23 Pa.C.S.A. §2511(a)(2)[?]

B. Whether the [o]rphans' [c]ourt committed an abuse of discretion and/or error of law when it concluded that [Erie OCY] had established, by clear and convincing evidence, the grounds for termination pursuant to 23 Pa.C.S.A. §2511(b)[?]

Mother's Brief at 3.

**LEGAL ANALYSIS**

We review an orphans' court decree terminating parental rights involuntarily to determine whether the record of the hearing below supports the factual findings of the orphan's court and if so, whether the orphan's court made an error of law or abused its discretion:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

- 5 -

Section 2511 of the Adoption Act, 23 Pa.C.S. § 2511, governs involuntary termination parental rights. It requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

As noted above, this Court, in an earlier appeal, reviewed the evidence supporting the Petitions to Involuntarily Terminate Parental rights and held that Erie OCY met its burden for the first part of the test, *i.e.*, Erie OCY presented sufficient evidence pursuant to Section 2511(a)(2) and (a)(8). *In re M.A.B.*, 166 A.3d at 445-46. We, therefore, now focus our analysis on the second part of the test, *i.e.*, whether the record supports the orphans' court determination that Erie OCY met its burden pursuant to Section 2511(b).

Section 2511(b) provides, in relevant part:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S. § 2511(b).

Our Courts have interpreted this provision as requiring the orphan's court to determine whether termination of parental rights would best serve the developmental, physical and emotional needs and welfare of the child:

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (quotation marks and citations omitted). Thus, we review whether the orphan's court properly concluded that terminating the parental rights of Mother and Father would best serve the needs and welfare of the Children.

**Father's appeal**

We begin by reviewing the claims presented by Father. Father first argues that the orphan's court abused its discretion and committed an error of law "when it failed to acknowledge and properly weigh the manifestly unfair circumstances under the bonding assessment of Dr. von Korff was conducted." Father's Brief at 4.

In particular, Father complains that Dr. von Korff's bonding assessment was "manifestly unfair" because Dr. von Korff's analysis was a "contest-like" comparison between him and the foster parents. *Id.* at 6, 8. Father also assails the bonding assessment on the basis that it attributes the Children's poor behaviors to him while attributing the Children's positive behaviors to their foster parents without adequate supporting evidence. *Id.* at 6.

Peter von Korff, Ph.D., who conducted a bonding assessment of the Children, concluded that the Children do not have a secure attachment to their parents. N.T., 12/7/17, at 13-14. Dr. von Korff further concluded that the Children are developing a secure attachment to their pre-adoptive foster parents. *Id.* at 15, 21-24.

Dr. von Korff testified that he did not conduct a "contest-like" comparison of Father and Mother versus the Children's foster parents as Father alleges. *See* N.T., 12/7/17, at 60-61. He testified that it "wasn't ever my intent to pit them against each other. . . . I think [I] would have done a

disservice to the [C]hildren and the Court if I simply tabulated all of the advantages of the [foster] home or these individuals versus the [parents]."

Moreover, the record reveals that Dr. von Korff spent sufficient time observing the interactions of Mother and Father with the Children in an effort to identify evidence of a secure attachment. *Id.* at 65-66.

Our review indicates that the record provides ample support for the orphan court's determination to place significant weight on Dr. von Korff's conclusion. *See In the Interest of D.F.*, 165 A.3d 960, 966 (Pa. Super. 2017), *appeal denied*, 170 A.3d 991 (Pa. 2017) ("The Orphans' Court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence."). Contrary to Father's contention, the trial court did not abuse its discretion or err as a matter of law in its consideration of Dr. von Korff's bonding assessment. Accordingly, Father's first claim does not merit any relief.

In his next claim, Father challenges the testimony of the Children's therapist, Francine Cochis, LCSW. Ms. Cochis opined that the Childrens' behavior would likely regress if the orphans' court removed them from their foster parents and returned them to Father and Mother. N.T., 1/24/18, at 41, 62.

Father first contends that the orphans' court erred "when it permitted Francine E. Cochis to testify as an expert witness without proper *voir dire*." Father's Brief at 4. Our review of the record reveals that counsel for Erie OCY

did, in fact, conduct *voir dire* of Ms. Cochis' qualifications. Additionally, counsel for Father did not object or cross-examine Ms. Cochis on her qualifications. **See** N.T., 1/24/18, at 25-27.[3] Thus, this claim of error has no factual basis.

Moreover, to the extent that Father's counsel challenges whether Ms. Cochis had the appropriate qualifications to testify as an expert, Father failed to object to her qualifications and thus, waived any challenge. **See State Farm Mut. Auto. Ins. Co. v. Dill**, 108 A.3d 882, 885 (Pa. Super. 2015), (quoting **Lockley v. CSX Transp. Inc.**, 66 A.3d 322, 325 (Pa. Super. 2013) ("'It is axiomatic that [i]n order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue.'"))).

Father further claims that the orphan's court failed to "properly evaluate her testimony in light of the obvious bias displayed by her towards the foster parents." Father's Brief at 4. This claim of error goes to a challenge to the weight that the orphan's court gave to Ms. Cochis' testimony. As we discussed above, we must accept the credibility and weight determinations of the orphans' court when the record supports them, as it does here. **See D.F.**, 165 A.3d at 966.

_____

[3] Counsel for Father asked only for clarification as to what area Ms. Cochis would be testifying as an expert. N.T., 1/24/18, at 28.

In his final claim, Father contends that the orphans' court failed to give adequate weight to the testimony of Rusty Weingard, M.Ed., who provided family therapy to the Children, Father, and Mother. Father's Brief at 4. According to Father, Mr. Weingard opined that it would be detrimental to the Children to sever their relationship with their parents. Father's Brief at 13, citing N.T., 1/24/18, at 166.

We note initially that Father mischaracterizes Mr. Weingard's testimony. Mr. Weingard's testimony was inconclusive about the impact of severing the Children's bond with the biological parents. Rather, Mr. Weingard testified about the impact of severing the Children's bond with both the biological and foster parents. N.T., 1/24/18, at 166. He never testified about the impact of severing the bond with the biological parents only.

Father additionally argues that the orphan's court erred in not placing more weight on Mr. Weingard's opinion because Mr. Weingard spent more time than Dr. von Korff or Ms. Cochis did observing him and the Children. Father's Brief at 6, 13. Father also argues that Mr. Weingard observed him with the Children under circumstances that were more representative of "real life." *Id.* at 6.

This argument is a challenge to the weight the orphan's court chose to give to the opinions of the experts. Such a determination is within the discretion of the orphans' court and we will not disturb it. *D.F.*, 165 A.3d at 966.

**Mother's appeal**

We next address claims Mother raised. In her first claim, Mother argues that the orphans' court abused its discretion by terminating her parental rights pursuant to Section 2511(a)(2). Mother's Brief at 10-15. As noted above, this court already held in the first appeal that Erie OCY presented sufficient evidence to terminate Mother's parental rights pursuant to Section 2511(a). **In Re M.A.B.**, 166 A.3d at 445.[4] Thus, the only issue properly before us in this appeal is whether the record supports the trial court's conclusion that Erie OCY presented sufficient evidence pursuant to Section 2511(b).

In her second issue, Mother avers that the orphan's court erred by finding that Erie OCY met its burden under Section 2511(b). In particular, Mother argues that the orphans' court failed to consider the trauma that terminating her parental rights would inflict on the Children. Mother's Brief at 10, 17. Mother maintains that much of the evidence presented during the termination hearing pitted the Children's bond with her against their bond with their pre-adoptive foster parents "in an unequal and unfair compare and contrast evaluation." **Id.** at 16-17. She insists that the court acted improperly

---

[4] We also note that Mother waived this claim by failing to include it in her concise statement of errors complained of on appeal. Mother alleged in her concise statement that the orphans' court abused its discretion and/or erred by terminating her parental rights pursuant to Section 2511(a)(8) and (b). She made no mention of Section 2511(a)(2). **See In re M.Z.T.M.W.**, 163 A.3d 462, 466 (Pa. Super. 2017) ("[I]t is well-settled that issues not included in an appellant's . . . concise statement of errors complained of on appeal are waived.").

by failing to consider the Children's bond with her "in isolation, separate and apart from the bond of the foster family." **Id.** at 16.

Upon careful review, we observe that the record is replete with evidence demonstrating that termination of Mother's parental rights would best serve the Children's needs and welfare. This includes the testimony of Dr. von Korff. As explained above, Dr. von Korff conducted a bonding assessment of the Children, Father, Mother, and the foster parents, and prepared a report detailing his findings.

During the termination hearing, Dr. von Korff opined that the Children lack a secure attachment to Father and Mother. N.T., 12/7/17, at 13-14. He based this conclusion on the Children's "impulsive and dysregulated" behavior in the presence of their parents. **Id.** at 12-13. He recalled one incident during which the Children "made almost continual reference to feces. They laughed hysterically. They couldn't contain themselves. And I'm sure the parents had a challenging time . . . because their children were simply not tractable." **Id.** at 12. In addition, while the Children were excited to see their parents and were affectionate toward them, "the talk is about toys, and what I got last time, or what snack I'm going to get and that sort of thing. That's the quality of the contact." **Id.** at 20.

During the bonding assessment, the Children gave inconsistent responses as to whether they would like to return to their parents' care, and Dr. von Korff opined that they have "no real developed thinking on the

- 13 -

matter." *Id* at 45-46, 64. In his report, Dr. von Korff related the following

incident:

> The examiner put the game aside and invited the [C]hildren to play with Lego blocks. While they played he encouraged them to speak informally about the fact of having two homes. [M.A.B.] announced, "That's what I have." Asked whether that experience is easy or hard she replied that it is hard. Asked why, she stated, "The judge has to decide." She explained, "You can't have the other home," and she repeated, "The judge will have to decide."
>
> The examiner asked both children what it would be like if the judge were to say that they should stay where they are now. Both children indicated that would be "okay." . . . [T]he examiner asked, "Even if [Father] and [Mother] are sad?" Both children nodded that it would still be "okay."
>
> However, after roughly thirty minutes of Lego play, [N.M.B.] announce casually that he would rather go live with "[Father] and [Mother]".[5] Asked about this turnabout, he replied, "They give us food, anything we want to eat." [M.A.B.] seconded this sentiment, saying, "They give us whatever we want." [N.M.B.] nodded at his sister's apparent endorsement.

Petitioner's Exhibit 19 at 12.

While Dr. von Korff testified that the Children do not appear to have a

secure attachment to anyone, he opined that they are developing a secure

attachment to their foster parents. N.T., 12/7/17, at 15, 21-24. He recalled

observing positive interactions between the Children and their foster parents

during the bonding assessment, and concluded that the foster home is where

the Children "have their greatest sense of security, and their greatest

---

[5] During this exchange, both Dr. von Korff and N.M.B. referred to Father and Mother using their first names.

opportunity to work within an environment that fosters further development of security. That's where things are getting going. They're not all the way home yet, but things have been getting going there." *Id.* at 21, 23.

Ultimately, Dr. von Korff opined that termination of Mother's parental rights would not have a detrimental impact on the Children. *Id.* at 24. He explained:

> . . . . As I said in my report, and it's painful to say, but the [C]hildren will say that they are going to be okay either way. And in their own minds, that's as close as they can come. As I said in my report, [M.A.B.] said more than once that, ["]the Judge will decide.["] And my own opinion was that the [C]hildren were communicating -- or at least [M.A.B.], was communicating to me that it's high time for a decision.

*Id.*

Mother further argues that the orphans' court should have analyzed the Children's relationship with her "in isolation." This assertion is contrary to the Pennsylvania Supreme Court's analysis. Our Supreme Court has explained that a child's relationship with his pre-adoptive foster parents is an important aspect of the Section 2511(b) analysis. *T.S.M.*, 71 A.3d at 268 ("Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents."). Moreover, as we explained above, Dr. von Korff testified that he did not merely pit Father and Mother against the Children's foster parents during his bonding assessment as Mother alleges. *See* N.T., 12/7/17, at 60-61.

Thus, the record confirms that the orphan's court properly determined that terminating Mother's parental rights would best serve the Children's needs and welfare. While the Children have a relationship with Mother, that relationship is similar to one that a child would have with a friendly visitor. In contrast, the Children are developing a more secure attachment to their foster parents, with whom they have lived for more than three years. Since the Children are only eight and nine years old, three years is a significant period of time to develop a meaningful bond with the family who provides stability, security and safety to them on a daily and consistent basis.

Based on the foregoing, we conclude that the orphans' court did not abuse its discretion or commit an error of law by terminating the parental rights of Father and Mother to the Children involuntarily. Therefore, we affirm the court's January 26, 2018 decrees.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/6/2018

- 16 -