J-S73045-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN RE: ADOPTION OF: C.A.P., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| APPEAL OF: C.P., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1175 WDA 2018 |

Appeal from the Order Entered August 1, 2018
In the Court of Common Pleas of Washington County
Orphans' Court at No(s):  No. 63-18-0406

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and OLSON, J.

MEMORANDUM BY OLSON, J.:                    **FILED DECEMBER 03, 2018**

C.P. ("Mother") appeals from the August 1, 2018 order terminating her parental rights to her five-year-old daughter C.A.P. ("Child").[1]  We affirm.

C.A.P. was born in June 2013 addicted to narcotics.  Fayette County Children and Youth Services ("CYS") crafted a safety plan and Child was discharged from the hospital into Mother's care.  Child lived with Mother and E.P. ("Father") for the first seven and one-half months of her life.  In February 2014, Mother and Father were arrested for narcotics related offenses.  CYS placed Child with a relative.  In March 2014, CYS placed Child with a different relative, T.W.  Three months later, at the conclusion of dependency

_____

[1] The trial court's order also terminated the parental rights of E.P., Child's father.  E.P. is not a party to this appeal and did not file his own appeal.

proceedings, T.W. was named Child's permanent legal guardian. Child has lived with T.W. for the past four and one-half years.

In January 2017, Mother filed a complaint in the Court of Common Pleas of Washington County seeking custody of Child. In February 2017, Mother began having weekly visits with Child. In May 2017, however, Mother was incarcerated for violating the terms of her parole. Although Mother had, or could have easily obtained, Child's contact information during her incarceration, she did not reach out to Child until February 2018 at which time, Mother wrote Child a letter. This only occurred after T.W. moved to dismiss Mother's custody complaint. Mother was released from prison on March 28, 2018.

The following day, T.W. petitioned the trial court to involuntary terminate Mother's and Father's parental rights as to Child. On July 6, 2018, the trial court conducted a hearing on the petition.[2] On August 1, 2018, the trial court granted the petition and involuntarily terminated Mother's and Father's parental rights as to Child. This timely appeal followed.[3]

Mother presents one issue for our review:

---

[2] An attorney served as Child's guardian *ad litem* at the hearing. Moreover, at the conclusion of the hearing, the guardian *ad litem* stated that terminating Mother's and Father's rights was in Child's best interest and that Child wished to remain with T.W. **See** N.T., 7/6/18, at 223-224. Hence, there was no conflict between Child's legal and best interests.

[3] Mother and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Did the trial court abuse its discretion or lack competent evidence to support its termination of [Mother's] parental rights pursuant to 23 Pa.C.S.[A.] § 2511?

Mother's Brief at 4.

We review an order involuntarily terminating parental rights for an abuse of discretion. *In re G.M.S.*, 193 A.3d 395, 399 (Pa. Super. 2018) (citation omitted). "The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination[.]" *In re Adoption of J.N.M.*, 177 A.3d 937, 942 (Pa. Super. 2018), *appeal denied*, 183 A.3d 979 (Pa. 2018) (citation omitted).

"In order to affirm the termination of parental rights, this Court need only agree with any one subsection under [s]ection 2511(a)." *In re Interest of D.F.*, 165 A.3d 960, 966 (Pa. Super. 2017), *appeal denied*, 170 A.3d 991 (Pa. 2017) (citation omitted). The trial court found that the requirements of section 2511(a)(1) were satisfied. Section 2511(a)(1) provides that a parent's rights to a child may be involuntarily terminated if, "[t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S.A. § 2511(a)(1).

Mother argues that filing the custody complaint and visiting Child once a week for a few months indicates that she did not intend to relinquish her parental rights to Child and has performed parental duties. These actions

occurred more than six months prior to T.W. filing the petition seeking to terminate Mother's parental rights. Although a trial court may not mechanically apply the six-month provision, *In the Interest of: T.J.J.M.*, 190 A.3d 618, 628 (Pa. Super. 2018) (citation omitted), considering the whole history of the case hurts Mother's argument. Mother did nothing to further her relationship with Child from the time Child was placed with T.W. in March 2014 until January 2017.

Mother's efforts were sporadic at best. For over 80% of the time that Child was in T.W.'s custody, Mother made no attempt to contact Child or to provide parental care and support. As this Court has stated, sporadic involvement in a child's life is insufficient to avoid termination under section 2511(a)(1). *In re T.D.*, 949 A.2d 910, 919 (Pa. Super. 2008), *appeal denied*, 970 A.2d 1148 (Pa. 2009).

Mother concedes that she "was generally not engaged with [Child] while incarcerated[.]" Mother's Brief at 12. She contends, however, that she was engaged with Child when she was not incarcerated. This argument fails for at least two reasons. First, Mother was incarcerated for most of Child's life. Second, being incarcerated does not suspend a parent's obligation to care for his or her child. To the contrary, showing love and affection while imprisoned may be more important than doing so when free. As Mother concedes in her brief, she was required to "utilize[] those resources at her command while in prison to continue and pursue a close relationship with [Child.]" Mother's Brief

at 12 (citation omitted). In this case, Mother failed to utilize the resources available to her while imprisoned to pursue a close relationship with Child.

Mother filed a custody action in January 2017; however, as noted above, she took minimal steps to further her bond with Child once she was re-incarcerated in May 2017. If Mother pursued a close relationship with Child between May 2017 and March 2018 she may not have demonstrated a settled purpose to relinquish her parental claim to Child or a failure to perform parental duties. Her failure to do so, however, establishes that the trial court's determination that T.W. satisfied section 2511(a)(1)'s requirements was supported by the record and free or legal error.

Having determined that T.W. proved by clear and convincing evidence the requisite factors under section 2511(a)(1), we next consider section 2511(b)'s requirements. The focus in terminating parental rights under section 2511(a) is on the parent, but the focus under section 2511(b) is on the child. *See In re M.Z.T.M.W.*, 163 A.3d 462, 464 (Pa. Super. 2017) (citation omitted).

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term bond is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the []section 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (cleaned up).  Moreover, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents."  *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citation omitted).

In this case, the evidence overwhelmingly supports the trial court's determination that terminating Mother's parental rights was in Child's best interest.  From prior to Child's birth until the day before the termination petition was filed, Mother showed a reckless disregard for Child's safety and well-being.  She used drugs while pregnant with Child and Child was born opioid dependent.  Mother had narcotics in her house when Child was only a few months old and was arrested because of this illegal activity.  After Mother was released from incarceration, she violated the terms of her parole and was re-incarcerated.  Hence, Mother's actions indicate a reckless disregard for Child's safety and well-being.

Moreover, there is no bond between Child and Mother.  Child recognizes Mother as "C."  N.T., 7/6/18, at 224.  When Child began visiting with Mother in early 2017, Child began wetting the bed.  *Id.* at 17.  Child told T.W. that she was afraid to leave T.W.  *Id.* at 78.  Child recognizes T.W. as her mother.  *Id.*  Hence, there is a bond between T.W. and Child.  T.W. has provided and cared for Child for most of her life and has been a stabilizing force in Child's life.

Child has a significant mental disorder. In order for Child to succeed, she needs a high level of parental involvement. *Id.* at 93. T.W. has provided this high level of parental involvement and, as noted above, Mother has failed to show she is capable of such involvement. Accordingly, we conclude that the trial court's finding that termination was in Child's best interest is supported by the record and free of legal error. As the trial court did not err in finding T.W. satisfied her burden of proof with respect to sections 2511(a)(1) and (b), we affirm the order terminating Mother's parental rights.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  12/3/2018