J-S05034-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.L.M-F., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.F., MOTHER | : : : : : : : | No. 1121 WDA 2022 |

Appeal from the Decree Entered August 26, 2022
In the Court of Common Pleas of Beaver County Orphans' Court at
No(s):  No. 3005 of 2022

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED: MARCH 27, 2023**

D.F. ("Mother") appeals from the decree terminating her parental rights as to her minor child, M.L.M.-F. Mother contends the trial court denied her due process rights by denying her motion for a continuance of the termination hearing. We affirm.

A termination hearing was scheduled for August 25, 2022 and August 26, 2022 in Beaver County. At the time of the hearing, Mother was incarcerated at the Allegheny County Jail. Mother is Spanish-speaking and is a Limited English Proficient ("LEP") person. Three days before the termination hearing, the court issued an order directing the Allegheny County Jail to transport Mother to the hearing. The next day, Mother filed an emergency motion for a continuance. Mother stated that her prison would not transport her to the hearing and would only allow her to participate via audio/video conference. *See* Emergency Motion for Continuance, 8/23/22, at ¶ 5. Mother

alleged that "[w]hile audio/video conference has been used in previous proceedings in this case, the procedure requires Mother to utilize two devices due to Spanish interpreters which, upon information and belief, is not available through [Allegheny County Jail's] systems." *Id.* at ¶ 6. Mother requested that the hearing be postposed to a date after her anticipated release date of September 22, 2022. *Id.* at ¶ 2. The court denied the motion but stated that it would reconsider if Mother was not transported to the hearing.

At the commencement of the termination hearing, on August 25, 2022, the court noted that Mother was not present. Instead, she was participating via a live audio/video feed from Allegheny County Jail. N.T., 8/25/22, at 8. A Spanish interpreter was provided for Mother. The court administered the oath for interpreters and ensured the interpreter was current with her required certifications and did not have a conflict of interest. *Id.* at 6-7. The court tested the quality of the audio feed and noted there was a delay in Mother hearing the proceedings in the courtroom, but determined the delay was short and not disruptive. *Id.* at 10-11, 13-14. The court also had an Allegheny County corrections officer test the methods of communication. *Id.* at 40. The court instructed Mother that she was able to speak to her counsel privately at any time by raising her hand and the courtroom would be emptied so she could converse with her counsel. *Id.* at 33.

Mother's counsel asked for a continuance because Mother was not brought to the hearing, in contravention of the court's order. *Id.* at 19-20. Counsel argued that using an interpreter through audio-visual means was an

extraordinary circumstance that warranted Mother being present in person.
*Id.* at 21-22. After verifying with counsel that he was able to adequately
converse with Mother and prepare for the termination hearing, the court
denied the continuance, and the hearing proceeded. *Id.* at 24, 39-40.
Mother's counsel renewed the request for a continuance following the hearing.
*Id.* at 174. The court again denied the request and stated:

> With regard to the issue, the issue again raised by [Mother's
> counsel], I look back over our records, and on, at our disposition
> hearing in April of 2020 and at the next permanency review
> hearing of July 1 of that same year, right in the mi[d]st of the
> pandemic, [M]other appeared via, via video under circumstances
> that were much worse than this when we were learning how to
> use the system, and there has been no complaints of those
> hearings, and since those hearings, or during those hearings, and
> I would also note that on the 19th of January of this year, the 12th
> of April of this year, [Mother] also appeared via video, and once
> again, the video that we utilized at that time was not of the quality
> that we used today, finally. The [c]ourt was mindful of any time
> that [Mother] may have been interrupted, had a question, been
> speaking to somebody, and I also provided any opportunity that
> [Mother] needed to, to speak with her lawyer confidentially and
> closed the courtroom to anybody else.

*Id.* at 178-79.

The court ultimately terminated Mother's parental rights. This appeal
followed. Mother raises a single issue:

> Did the trial court err as a matter of law and abuse its discretion
> by depriving [Mother] of due process and equal access to a judicial
> proceeding by denying her request for a continuance when the
> court did not ensure her attendance at the hearing and appointed
> an interpreter to interpret through a telephone for the duration of
> the hearing?

Mother's Br. at 5.[1]

The decision of granting or denying a continuance is within the discretion of the trial court. *In the Interest of D.F.*, 165 A.3d 960, 964 (Pa.Super. 2017), *appeal denied*, 170 A.3d 991 (Pa. 2017). We will not disturb a trial court's decision absent an abuse of discretion. *Id.* at 965. "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the results of partiality, prejudice, bias, or ill-will." *In re J.K.*, 825 A.2d 1277, 1280 (Pa.Super. 2003) (quoting *Corrado v. Thomas Jefferson Univ. Hosp.*, 790 A.2d 1022, 1035 (Pa.Super. 2001)).

Mother argues that the court's denial of her motion for a continuance violated her rights to due process. She contends that her dual status as an incarcerated parent and a LEP person necessitated that she appear in person at the termination hearing. Mother's Br. at 10. Mother concedes that the court instituted several procedural safeguards, including appointing her counsel,

---

[1] In her Statement of Questions Presented, Mother raised two "secondary" questions: "Did the trial court err as a matter of law and fact by finding the clear and convincing evidence was presented to establish a legal basis for terminating [Mother's] parental rights pursuant to 23 Pa.C.S.[A.] § 2511(a)(2)?" and "Did the trial court err as a matter of law and fact by finding that [Mother] contacted no service providers in contradiction to evidence presented at trial resulting in an erroneous conclusion of law?" Mother's Br. at 5. However, Mother later states in her brief that she "waives argument" on these two issues. *Id.* at 19. She has therefore waived appellate review of these issues. *See* Pa.R.A.P. 2119(a); *Commonwealth v. Hunzer*, 868 A.2d 498, 509, 516 (Pa.Super. 2005).

who was present at the hearing, providing her with a means to confidentially communicate with her counsel during the hearing, and appointing an interpreter who appeared at the hearing. *Id.* at 13-14, 16. However, she argues that she only was able to hear the interpreter and no other part of the proceeding and was interrupted several times which may have caused her to miss testimony against her. *Id.* at 16. Mother urges this Court to adopt a "heightened" due process standard when considering a continuance request from a person who is both incarcerated and not proficient in English. *Id.* at 10.

While a parent must receive notice of a termination hearing, a parent's presence is not required for the termination to proceed. ***In the Interest of D.F.***, 165 A.3d at 965.

> Once a court is satisfied that a parent has received notice of the hearing, it is then entirely within the trial court's discretion to make a ruling on the continuance request based on the evidence before it. As in all matters involving parental rights, the best interests of the child are paramount. Accordingly, the exercise of the trial court's discretion includes balancing the evidence submitted in support of the request against other relevant factors, such as a parent's response and participation, or lack thereof, in prior proceedings and appointments important to the welfare of the child. Most importantly, the trial court is in the best position to factor in the impact that further delay will have on the child's well-being.

*Id.*

Further, "[i]t is well-settled that a trial court is **not** required to transport an incarcerated parent to a termination hearing in order to satisfy the needs

of due process." **In re Adoption of J.N.F.**, 887 A.2d 775, 781 (Pa.Super. 2005) (emphasis in original). Rather, "if the incarcerated parent desires to contest the termination petition, the trial court must afford the incarcerated parent the ability to participate meaningfully in the termination hearing through alternate means." **Id.**

Here, the court provided Mother with sufficient opportunity to meaningly participate in the termination hearing and she was not deprived of her due process rights. The court attempted to have Mother appear in person when it issued an order that she be transported to the hearing. Unfortunately, that did not occur due to the prison's restrictions, so the court instead provided an audio/visual means of communication, as well as a court-certified interpreter. Mother also had court-appointed counsel, who was present at the hearing, and she was able to confidentially communicate with him at any time.

Further, a review of the termination hearing transcript reveals that, contrary to Mother's assertions, the limited difficulties associated with the technological issues were immediately resolved and inconsequential. Mother claims there were issues with the technology "[s]everal times in the hearing" and cites two occasions in the transcript. Mother's Br. at 8 (citing N.T. at 76-77, 80). However, upon review, in each of those instances, Mother lost connection for a very brief time period and the issue was immediately detected

- 6 -

and rectified.[2] Mother further claims "there were occasions [Mother] requested clarification or did not understand." *Id.* (citing N.T. at 144). However, in the two instances cited by Mother, she simply asked to repeat the question and responded, "At that time?" to another question posed to her. N.T. at 144. This is hardly evidence that Mother did not understand the questions.

In sum, Mother has not shown any evidence in the record that her due process rights were violated. The court ensured that Mother was able to meaningfully participate in the hearing, *see In re Adoption of J.N.F.*, 887

---

[2] At pages 76-77, the transcript reads:

> [FATHER'S INTERPRETER]: The interpreter just informed [Mother] that she can't be heard. Just be aware of that.
>
> THE COURT: All right. Does she have a statement for her counsel? She said something and, she stepped off camera and said something.
>
> [MOTHER'S INTERPRETER]: This is interpreter Arenas now.
>
> THE COURT: Right. You were switching equipment around.
>
> [MOTHER'S INTERPRETER]: I can hear you now is what she's saying.
>
> THE COURT: Okay. All right. You can continue[.]

N.T. at 76-77. At page 80, the transcript reads:

> [MOTHER'S INTERPRETER]: Excuse me. It just disconnected.
>
> THE COURT: All right. So the interpreter, the interpreter has informed the, the interpreter has informed the Court that they lost the connection, and they're reestablishing that connection now.

*Id.* at 80.

A.2d at 781, and it did not abuse its discretion in denying Mother's motion for a continuance.[3]

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/27/2023

---

[3] Mother urges this Court to adopt a novel, three-part test when a parent is both incarcerated and a LEP person. **See** Mother's Br. at 10, 17-18. We decline Mother's invitation to adopt her proposed test.