J-S47012-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: B.T.F., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.F., MOTHER | : | No. 857 MDA 2020 |

Appeal from the Decree Entered May 29, 2020
In the Court of Common Pleas of Lancaster County
Orphans' Court at No:  2019-02489

BEFORE:   STABILE, J., NICHOLS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY STABILE, J.:          **FILED DECEMBER 16, 2020**

K.F. ("Mother") appeals from the decree entered May 29, 2020, which terminated involuntarily her parental rights to her son, B.T.F. ("Child").[1]  After careful review, we affirm.[2]

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The orphans' court entered a separate decree terminating the parental rights of Child's father, M.M. ("Father").  Father appealed at Superior Court docket number 839 MDA 2020.  We address his appeal in a separate memorandum.

[2] The orphans' court based its order in part on information contained in Child's dependency record.  While the court incorporated the dependency record as part of the termination proceedings, it did not enter a copy of the record as an exhibit, and Mother did not appeal from any dependency orders.  Thus, this Court did not receive the dependency record to review for this appeal.  For the reasons discussed below, however, the evidence was sufficient to support the court's decision, even in the absence of the dependency record.  We also note that it was Mother's responsibility to ensure that the record before this Court was complete.  **See** Pa.R.A.P. 1921, Note ("All involved in the appellate process have a duty to take steps necessary to assure that the appellate court has a complete record on appeal, so that the appellate court has the materials

The Lancaster County Children and Youth Social Services Agency ("the Agency") became involved with Child at the time of his birth in March 2018, after receiving a report that Child was experiencing withdrawal symptoms due to prenatal exposure to "substances." N.T., 2/6/20, at 6. The Agency devised a safety plan, providing that Child's maternal grandmother would supervise all contact between Mother and Child. *Id.* at 5. Mother allegedly violated the safety plan by leaving her home with Child and without the supervision of the maternal grandmother. *Id.* As a result, the Agency obtained custody of Child in June 2018 and placed him in foster care.[3] *Id.* at 4.

Significantly, Mother has a lengthy history of involvement with the child welfare system. Although the details are not entirely clear from the record, Mother is an indicated perpetrator of child abuse, and her parental rights were terminated as to two other children in 2016.[4] *Id.* at 4-6, 24-25. When the juvenile court adjudicated Child dependent, it found aggravated circumstances

---

necessary to review the issues raised on appeal. Ultimate responsibility for a complete record rests with the party raising an issue that requires appellate court access to record materials.").

[3] At the time the Agency obtained custody of Child, it was not aware of Father's identity. The Agency identified Father in September 2018 and confirmed his paternity via a paternity test. N.T., 2/6/20, at 10.

[4] Mother is on parole because of a series of criminal offenses, including felony aggravated assault, dating back to 2014. N.T., 2/6/20, at 9-10. She was incarcerated and then released in 2017. *Id.* at 23. Testimony from a prior termination hearing, which the orphans' court continued in order to appoint new counsel for Mother, indicates that her offenses resulted from the same incident or incidents as her child abuse finding. N.T., 12/16/19, at 5.

as to Mother and declined to provide her with a reunification plan. *Id.* at 6. The court did provide Mother with the opportunity to attend visits with Child, but she attended only three possible visits, the last of which occurred on July 10, 2018. *Id.* at 7. After that, Mother did not call to confirm her attendance at visits in advance or cancelled at the "last minute." *Id.* at 6-7. The court suspended Mother's visits in September 2018. *Id.* at 7.

On October 11, 2019, the Agency filed a petition to terminate Mother's parental rights to Child involuntarily. The orphans' court conducted a hearing to address the petition on February 6, 2020. Following the hearing, on May 29, 2020, the court entered its decree terminating Mother's parental rights.[5] Mother timely filed a notice of appeal on June 19, 2020, along with a concise statement of errors complained of on appeal.

> Mother now raises the following claims for our review:
>
> 1. Whether the [o]rphan[s'] [c]ourt erred in its [d]ecree [entered] . . . May 29, 2020 that the . . . Agency had met its burden in proving that [M]other's parental rights should be terminated when there is evidence she was working on and completing her goals to be considered in lieu of a child permanency plan throughout the time the child was in custody?
>
> 2. Whether the [o]rphan[s'] [c]ourt erred in its decree [entered] . . . May 29, 2020 that the . . . Agency had met its burden in proving that [M]other's pa[rent]al rights should be terminated and not allow [*sic*] [M]other additional time to complete the requirements to enable reunification when [M]other testified under oath to the progress and efforts that were being made towards reunification with her son, [Child?]

---

[5] The orphans' court entered an initial decree on May 21, 2020, but entered an amended decree on May 29, 2020, to list the correct counsel for Mother.

Mother's Brief at 8 (orphans' court answers omitted).

We review Mother's claims pursuant to the following standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Section 2511 of the Adoption Act governs the involuntary termination of parental rights. *See* 23 Pa.C.S.A. § 2511. It requires a bifurcated analysis:

> . . . . Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Here, the orphans' court terminated Mother's parental rights pursuant to Section 2511(a)(1), (2), and (b). We need only agree with the court as to

any one subsection of Section 2511(a), as well as Section 2511(b), to affirm.

*In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). In this case, we focus on Section 2511(a)(1) and (b), which provide:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> ***
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.
>
> ***

23 Pa.C.S.A. § 2511(a)(1), (b).

While Mother purports to raise two separate claims for our review, both claims are substantially identical and relate to Section 2511(a). Accordingly, we begin by addressing the termination of Mother's parental rights pursuant to Section 2511(a)(1). To satisfy the requirements of Section 2511(a)(1),

"the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008). The orphans' court must then consider the parent's explanation for his or her abandonment of the child, in addition to any post-abandonment contact. *Id.* This Court has emphasized that a parent does not perform parental duties by displaying a merely passive interest in the development of a child. *In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (quoting *In re C.M.S.*, 832 A.2d 457, 462 (Pa. Super. 2003), *appeal denied*, 859 A.2d 767 (Pa. 2004)). Rather,

> [p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*Id.* (citations omitted).

In her brief, Mother contends that the orphans' court should not have terminated her parental rights because of the progress she was making toward reunification with Child. She contends that she was compliant with her parole,

- 6 -

had obtained employment, was receiving mental health treatment, completed parenting classes, and was seeking substance abuse treatment. Mother's Brief at 13-19. Regarding her failure to attend visits with Child, Mother blames this on "illnesses, lack of transportation[,] and a desire to have her daughter also visit with [Child.]" *Id.* at 13-15. She insists that she requested photographs and updates regarding Child after the suspension of her visits. *Id.* at 15, 18-19.

The orphans' court explained its decision to terminate Mother's parental rights pursuant to Section 2511(a) as follows, in relevant part:

> The court did not grant Mother a plan for reunification with the [c]hild because of the presence of multiple aggravated circumstances: Mother's parental rights were involuntarily terminated to two of her other children and, in a judicial finding, Mother was determined to be the perpetrator of abuse upon a child. Mother's history of having children that she is unable to parent goes back to 2007. Further, Mother's behavior in failing to make any effort to demonstrate commitment to the [c]hild indicates her desire to relinquish her parental rights. . . . Instantly, Mother's failure to parent requires that her parental rights be terminated. Mother has been given many opportunities to correct her problems, but she has failed to address them. The Agency provided services to Mother in the past but she failed to complete those objectives. Mother was well aware of what she needed to work on, which primarily was to remain free from drugs and alcohol, to have healthy mental health functioning, and to successfully complete a parenting class. While the court did not give Mother a child's permanency plan with a goal of reunification with the [c]hild, had Mother demonstrated substantial progress toward resolving these principal concerns the court may well have ordered that the [c]hild be returned to her. Instead, Mother has demonstrated a profound incapacity to parent and a refusal to remedy those critical conditions. Sadly, Mother remains the same person she was when her first child was placed in the custody of the Agency. The totality of the record[] amply demonstrates that Mother is unable to parent the [c]hild.

Orphans' Court Opinion, 7/16/20, at 16-17.

Our review of the record supports the conclusion of the orphans' court. The Agency filed its termination petition on October 11, 2019, such that the critical six-month period began on April 11, 2019. During that period, Mother had no contact with Child. As summarized above, Mother had the opportunity to visit with Child after his placement in foster care, but she attended only three visits, the last of which occurred on July 10, 2018. N.T., 2/6/20, at 7. After that, Mother did not call to confirm her attendance at visits in advance or cancelled at the "last minute." *Id.* at 6-7. The juvenile court suspended Mother's visits in September 2018. *Id.* at 7. Agency caseworker, Jacqueline McNelis, testified that Mother last saw Child during the visit on July 10, 2018, and that she was not aware of Mother making any effort to inquire about Child since that time. *Id.* at 7, 39.

Additionally, the record indicates that Mother failed to address the issues resulting in Child's placement in foster care. Ms. McNelis testified that, while Mother had not committed any parole violations, she was not aware of Mother obtaining mental health treatment, completing a parenting class, or otherwise doing anything to better herself. *Id.* at 9-10, 38-39. Most troublingly, Mother

submitted a drug screen on November 7, 2019, which came back positive for amphetamines and methamphetamines.[6] *Id.* at 7-8.

Therefore, the record confirms that Mother refused or failed to perform parental duties during the six months immediately preceding the filing of the termination petition pursuant to Section 2511(a)(1). Mother had no contact with Child during the relevant period, and made no apparent effort to have contact with Child or to remedy the issues preventing Child from returning to her care. While Mother testified that she had been attending mental health treatment[7] and seeking substance abuse treatment, among other things, the court was under no obligation to accept that testimony. *Id.* at 54-59; *see In the Interest of D.F.*, 165 A.3d 960, 966 (Pa. Super. 2017) ("The [o]rphans' [c]ourt is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence."). Even assuming the accuracy of Mother's testimony, the minimal

_____

[6] Mother also is involved with the Agency regarding a different child. Agency supervisor, Kimberly Wright, testified that the Agency became involved with that child due to "Mother's history[,]" the child's truancy issues, and drug use by the child's father. N.T., 2/6/20, at 47-48. Ms. Wright explained that the juvenile court adjudicated the child dependent while permitting her to remain in the home and ordered Mother to provide the drug screen on November 7, 2019. *Id.* at 48, 53. Ms. Wright added that Mother has communicated with the Agency inconsistently since that time. *Id.* at 49-53.

[7] More specifically, Mother's testimony appears to indicate that she had been attending mental health treatment up until the last two months and was now seeking treatment at a provider located closer to her home. N.T., 2/6/20, at 55.

efforts she described would not excuse her complete failure to have contact with Child for over a year and a half.[8] Thus, Mother's claims do not entitle her to relief.

We next consider the termination of Mother's parental rights pursuant to Section 2511(b). The requisite analysis is as follows:

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the [S]ection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
>> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

---

[8] Mother offered little explanation for her failure to visit with Child, other than stating that she had wanted to get a later visitation time in order to bring her other child with her. N.T., 2/6/20, at 61-62. Mother also indicated that she attempted to call the Agency to inquire about Child "a couple of times[,]" explaining that she has "really bad anxiety[,]" and that her mother makes her phone calls for her. *Id.* at 60-61.

***In re Adoption of C.D.R.***, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting

***In re N.A.M.***, 33 A.3d 95, 103 (Pa. Super. 2011) (quotation marks and

citations omitted).

Mother failed to include a claim as to Section 2511(b) in her statement

of questions involved or in her concise statement of errors complained of on

appeal.  Thus, Mother waived any challenge regarding that subsection.  ***See***

***In re M.Z.T.M.W.***, 163 A.3d 462, 466 (Pa. Super. 2017) ("[I]t is well-settled

that issues not included in an appellant's statement of questions involved and

concise statement of errors complained of on appeal are waived.").

Even if Mother had not waived this claim, it would be meritless.  Mother

does not include a separate claim regarding Section 2511(b) in her brief but

instead includes references to Section 2511(b) in both of her claims regarding

Section 2511(a).  ***See*** Mother's Brief at 16-17.  In essence, Mother repeats

her previous argument that she was making progress toward reunification

with Child, and contends that the Agency did not present sufficient evidence

addressing whether Child shares a bond with her and what effect terminating

her parental rights would have on Child.  ***Id.***

The orphans' court explained its decision to terminate Mother's parental

rights pursuant to Section 2511(b) as follows:

> In respect to Mother, the record more than amply demonstrates that there is no bond between Mother and the [c]hild to consider.  Mother had absolutely no contact with the [c]hild from July 2018 (when the [c]hild was just four months of age) through the conclusion of the termination proceedings on February 6, 2020.

- 11 -

\*\*\*

> The [c]hild deserves a nurturing, loving and stable home. The [c]hild enjoys a home possessing these characteristics with the resource family. It is in the [c]hild's best interest that Mother's . . . parental rights be terminated so the [c]hild will have permanency and a loving family to support all of his needs.

Orphans' Court Opinion, 7/16/20, at 21-22.

The record once again supports the decision of the orphans' court. Child was born in March 2018 and entered foster care in June 2018. N.T., 2/6/20, at 4. Mother visited Child only three times while he was in foster care and has not had any contact with him at all since July 2018. *Id.* at 7. In contrast to Child's minimal contact with Mother, Ms. McNelis agreed that Child had spent his entire placement in foster care residing with the same pre-adoptive foster family, and that he did not "know anyone else . . . as a "parental role model[.]" *Id.* at 20-21. Under these circumstances, it is clear that Mother and Child do not share a bond, and that terminating Mother's parental rights involuntarily would best serve Child's needs and welfare pursuant to Section 2511(b). *See Matter of Adoption of M.A.B.*, 166 A.3d 434, 449 (Pa. Super. 2017) ("[A] child develops a meaningful bond with a caretaker when the caretaker provides stability, safety, and security regularly and consistently to the child over an extended period of time.").

Based on the foregoing, the orphans' court did not abuse its discretion or commit an error of law by terminating Mother's parental rights involuntarily. Therefore, we affirm the court's May 29, 2020 decree.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/16/2020