J-S11001-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: R.H., A MINOR | : | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.H., MOTHER | : | No. 1182 WDA 2020 |

Appeal from the Decree Entered September 22, 2020
In the Court of Common Pleas of Allegheny County Orphans' Court at
No: CP-02-AP-233-2018

| | | |
|---|---|---|
| IN RE: R.H., A MINOR | : | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.H., MOTHER | : | No. 1183 WDA 2020 |

Appeal from the Decree Entered September 22, 2020
In the Court of Common Pleas of Allegheny County Orphans' Court at
No: CP-02-AP-232-2018

BEFORE: STABILE, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY STABILE, J.: **FILED: June 10, 2021**

J.H. ("Mother") appeals from the decrees entered September 22, 2020,

which terminated involuntarily her parental rights to her children, R.L.H., a

_____

[*] Retired Senior Judge assigned to the Superior Court.

male born in March 2016, and R.C.H., a female born in December 2016 ("the Children").[1] After careful review, we affirm.

The record indicates that the Allegheny County Office of Children, Youth and Families ("CYF") became involved with Mother after it received a report at or near the time of R.L.H.'s birth in March 2016. N.T., 8/23/19, at 8-9. CYF conducted an investigation, during which Mother acknowledged that she was homeless, suffering from depression, using marijuana, and that domestic violence was occurring in her relationship. *Id.* While CYF referred Mother for services, it did not seek to remove R.L.H. from her care. *Id.* at 8-10.

The subsequent procedural history of this matter is somewhat unclear. The trial court adjudicated R.L.H. dependent by order dated August 10, 2016 but allowed him to remain with Mother. The record does not appear to indicate if anything specific precipitated the adjudication. When R.C.H. was born in December 2016, the court did not adjudicate her dependent. The Children remained in Mother's care until March 2017, when CYF obtained emergency custody authorizations and placed them in foster care. *Id.* at 6, 13. A shelter care order for R.L.H., dated April 3, 2017, states that the court granted CYF emergency custody because the Children "were placed . . . with their aunt.

_____

[1] The decrees also terminated the parental rights of the Children's father, R.H., who did not appeal.

The mother was not to be alone with the [C]hildren and this happened."[2]  *Id.* at 13.  The Children have remained in foster care continuously since that time, and the court adjudicated R.C.H. dependent by order dated May 3, 2017.

CYF developed reunification objectives for Mother, and she made some progress toward compliance.  N.T., 8/23/19, at 14-17.  However, Mother left Pennsylvania in approximately May 2018 and failed to visit with the Children.  *Id.* at 20-21.  She did not send the Children cards, letters, gifts, or support.  *Id.* at 21.  Mother did not ask to visit with the Children, and had no contact with them at all, from the time she left Pennsylvania until she returned in mid-October 2018.  *Id.* at 20-21.

On October 31, 2018, CYF filed petitions to terminate Mother's parental rights involuntarily.  Due to continuances, a hearing on the petitions did not begin until August 23, 2019 and did not conclude until September 18, 2020.  Following the hearing, on September 22, 2020, the trial court entered decrees terminating Mother's rights.  Though Mother initially failed to file timely notices of appeal, she requested leave to appeal *nunc pro tunc* on October 29, 2020.  The court entered orders granting leave to appeal *nunc pro tunc* on November 5, 2020, and Mother filed notices of appeal that same day, along with concise statements of errors complained of on appeal.

Mother now raises the following claims for our review:

---

[2] This explanation appears on the second page of the shelter care order.  While the first pages of the Children's shelter care orders appear in the record as exhibits, the second pages do not.  A witness read the relevant portion of the order during the hearing.  N.T., 8/23/19, at 13.

1. Did the trial court abuse its discretion and/or err as a matter of law in granting the petition to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S.[A.] §[]2511(a)(1), (2), (5), and (8)?

2. Did the trial court abuse its discretion and/or err as a matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of Mother's parental rights would best serve the needs and welfare of the [C]hild[ren] pursuant to 23 Pa.C.S.[A.] §[]2511(b)?

Mother's Brief at 8 (trial court answers omitted).

We review Mother's claims pursuant to the following standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Section 2511 of the Adoption Act governs the involuntary termination of parental rights. *See* 23 Pa.C.S.A. § 2511. It requires a bifurcated analysis:

. . . . Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the

needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the trial court terminated Mother's parental rights pursuant to Sections 2511(a)(1), (2), (5), (8), and (b). We need only agree with the court as to any one subsection of 2511(a), in addition to Section 2511(b), to affirm. ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Here, we analyze the court's decision to terminate pursuant to Section 2511(a)(1) and (b),[3] which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> ***
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings,

_____

[3] CYF included Section 2511(a)(1) in its termination petitions, the trial court listed Section 2511(a)(1) as a basis for termination in its decrees, and Mother raised Section 2511(a)(1) in her concise statements. Nonetheless, the court did not discuss Section 2511(a)(1) in its opinion. We focus our analysis on Section 2511(a)(1), despite the court's omission, because we believe it is the subsection that most clearly supports the court's decision.

income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

We begin by addressing the trial court's termination of Mother's parental rights pursuant to Section 2511(a)(1). To satisfy the requirements of Section 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008). The trial court must then consider the parent's explanation for his or her abandonment of the child, in addition to any post-abandonment contact. *Id.* This Court has emphasized that a parent does not perform parental duties by displaying a merely passive interest in the development of a child. *In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (quoting *In re C.M.S.*, 832 A.2d 457, 462 (Pa. Super. 2003), *appeal denied*, 859 A.2d 767 (Pa. 2004)). Rather,

[p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental

rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*Id.* (citations omitted).

Mother argues on appeal that the evidence presented at the termination hearing was insufficient. Mother's Brief at 21-25. Mother maintains that she obtained housing, completed domestic violence counseling, and stopped using marijuana. *Id.* at 22-23. While she acknowledges that she missed many of her visits with the Children, she contends that she attempted to schedule visits unsuccessfully and directs this Court's attention to her own testimony at the hearing. *Id.* at 22. She also asserts that missed visits can never be a basis for removing a child from a parent's care and, "therefore[, are] not a condition a parent must remedy pursuant to 23 Pa.C.S.[A.] §[]2511(a)." *Id.* at 24.

As discussed above, CYF filed its petitions to terminate Mother's parental rights on October 31, 2018, meaning that the critical six-month period under Section 2511(a)(1) began on April 30, 2018. CYF caseworker Deborah Pfeifer testified that Mother left Pennsylvania in approximately May 2018 and failed to visit with the Children until after she returned in mid-October 2018. N.T., 8/23/19, at 20-21. Mother did not ask to visit with the Children during this time, nor did she send them cards, letters, gifts, or support. *Id.* at 21. Ms. Pfeifer testified merely that Mother called the Children's foster mother on the phone "a few" times. *Id.* at 21-22.

Although the six months preceding the filing of the termination petitions is the focus of our analysis, we note that Mother's failure to visit the Children

consistently continued even after she returned to Pennsylvania. ***See B.,N.M.***, 856 A.2d at 855 ("[T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision."). William Pipkins, the transportation supervisor for the visits, testified that Mother last attended a visit in December 2019. N.T., 9/18/20, at 51. Before that, Mother last attended a visit in August 2019. ***Id.*** Of thirty-three recently scheduled visits, Mr. Pipkins testified that Mother attended only one. ***Id.*** at 51-52. He explained that this figure included virtual visits available during the COVID-19 pandemic. ***Id.*** at 52. While the Children's foster mother cancelled one of the thirty-three scheduled visits, the others did not occur because Mother failed to appear, failed to confirm, or because his staff did not have Mother's contact information and could not locate her. ***Id.*** at 57-58.

Based on this evidence, the record demonstrates that Mother refused or failed to perform parental duties during the six months preceding the filing of the termination petitions and during the nearly two years that followed. While Mother claimed at the hearing that she attended visits as often as she could, and blamed others for her lack of more frequent visits, it was within the trial court's discretion to reject her testimony as lacking credibility. ***Id.*** at 102-06, 120-22; ***see In the Interest of D.F.***, 165 A.3d 960, 966 (Pa. Super. 2017), *appeal denied*, 170 A.3d 991 (Pa. 2017) ("The [trial c]ourt is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence."). Thus, we

affirm the termination of Mother's parental rights to the Children pursuant to Section 2511(a)(1).

We next consider the termination of Mother's parental rights pursuant to Section 2511(b). The requisite analysis is as follows:

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the [S]ection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
>> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (citations and quotation marks omitted).

Mother focuses her claim regarding Section 2511(b) on the testimony of CYF's expert psychologist, Eric Bernstein, Psy.D. She emphasizes that Dr. Bernstein last performed interactional evaluations, during which he observed the Children interact with her and their pre-adoptive foster mother, in 2019.

Mother's Brief at 11-12. Mother argues that Dr. Bernstein could not offer an opinion on whether termination would serve the Children's needs and welfare, and that more recent evaluations were necessary to determine the effect that termination would have on them and whether the foster mother could provide them with permanence. *Id.* at 26-27.

The trial court explained its decision to terminate pursuant to Section 2511(b) as follows:

> . . . . The Children have been in the care of [their foster mother] for almost three years. [The f]oster [m]other meets the[] parental needs of the Children. She provides the Children with love and support. Additionally, Mother has not had any contact with the Children for over nine months. The Children are bonded with [their f]oster [m]other; severance of the parental bond with biological Mother would not likely cause any serious harm to the [C]hildren at this time. Both [of the] Children are very young and have very limited memories, and interactions with Mother. The Children look to [their f]oster [m]other to meet their emotional, psychological, [and] educational needs. [The f]oster [m]other provides a stable home, love and support. Mother has not been successful at achieving her goals set for reunification, in the allocated timeframe. Therefore, it best serves the [C]hildren['s] needs and welfare to terminate Mother's [parental r]ight[s].

Trial Court Opinion, 1/22/21, at 13.

Our review of the record supports the trial court's determination. The Children entered foster care in March 2017, when R.L.H. was a year old and R.C.H. was three months old. By the time the termination hearing concluded in September 2020, R.L.H. was four and a half years old, and R.C.H. was three years and nine months old. In the meantime, the record indicates that the Children had minimal contact with Mother and had not seen her at all since

- 10 -

the end of 2019.[4]  It is apparent given the circumstances that the Children do not have a meaningful bond with Mother, and that termination of her parental rights would not cause the Children to suffer emotional harm.  *See Matter of Adoption of M.A.B.*, 166 A.3d 434, 449 (Pa. Super. 2017) (instructing "that a child develops a meaningful bond with a caretaker when the caretaker provides stability, safety, and security regularly and consistently to the child over an extended period of time.").

While Mother is correct Dr. Bernstein did not recommend termination of her parental rights, her argument oversimplifies the issue.  Expert evaluations are not a prerequisite to terminate parental rights.  *See In re K.K.R.-S.*, 958 A.2d 529, 533 (Pa. Super. 2008) ("In analyzing the parent-child bond, the [trial] court is not required by statute or precedent to order a formal bonding evaluation be performed by an expert.").  It was also within the trial court's discretion to reject Dr. Bernstein's recommendations.  *See In re Bosley*, 26 A.3d 1104, 1111 (Pa. Super. 2011) ("[A] trial court has discretion to accept or reject a witness' testimony, including that of an expert witness[.]").

Dr. Bernstein's evaluation reports and testimony indicate that he did not recommend termination of Mother's parental rights primarily for two reasons.  First, he was unable to reconcile Mother's claim that she was compliant with CYF with contradictory reports from other sources that she was not compliant.

---

[4] Although the details are not entirely clear, R.C.H. did not attend every visit that occurred and, therefore, saw Mother even less than R.L.H.  N.T., 9/18/20, at 122-23.

N.T., 9/18/20, at 20, 23, 39; Exhibit 1 (5/23/19 Psychological Evaluation at 6 and 2/27/20 Psychological Evaluation at 6). Second, he was concerned that the Children's pre-adoptive foster mother suffered from a significant medical condition, which might impair her ability to care for them. N.T., 9/18/20, at 37-39; Exhibit 1 (5/23/19 Psychological Evaluation at 6).

Regarding Dr. Bernstein's first concern, the trial court heard competing testimony at the hearing regarding whether Mother was compliant with CYF. It was the court's duty to consider and resolve the conflicts in that testimony. **See D.F.**, 165 A.3d at 966. The court did so and found that Mother lacked credibility.

Regarding Dr. Bernstein's second concern, our law does not require that a trial court weigh the health of a pre-adoptive foster parent as a critical factor when rendering a termination decision. Indeed, although it is not preferred, a court may terminate parental rights even when the agency has not identified any pre-adoptive foster parent at all. **See In re K.C.F.**, 928 A.2d 1046, 1052-54 (Pa. Super. 2007), *appeal denied*, 936 A.2d 41 (Pa. 2007) (observing, "the termination statute does not require children to be placed in a pre-adoptive home as a precondition to termination of parental rights."). It is important to note that testimony at the hearing indicated the Children's foster mother is "very active," and that her health does not presently prevent her from caring for the Children. N.T., 9/18/20, at 64. In addition, the record is replete with testimony that the Children share a bond with their foster mother, with whom they have resided since 2017. N.T., 8/23/19, at 26-28; N.T., 9/18/20, at 10,

37-38, 62-64, 78. We discern no abuse of discretion by the trial court in its decision to terminate Mother's parental rights, despite Dr. Bernstein's lack of support, and affirm pursuant to Section 2511(b).

Based on the foregoing, we conclude that Mother's claims do not entitle her to relief, and we affirm the September 22, 2020 decrees terminating her parental rights to the Children involuntarily.

Decrees affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/10/2021