J-S08016-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.T.R., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.T.W.B., FATHER | : : : : : : : : : | No. 1718 MDA 2023 |

Appeal from the Decree Entered November 16, 2023
In the Court of Common Pleas of Luzerne County Orphans' Court at
No(s):  A-9489

BEFORE:   OLSON, J., MURRAY, J., and STEVENS, P.J.E.*

MEMORANDUM BY MURRAY, J.:                    **FILED: MARCH 22, 2024**

M.T.W.B. (Father) appeals the decree granting the petition to involuntarily terminate his parental rights to L.R. (Child) (born in November 2015), which was filed by L.R. (Mother) and her husband, D.R. (Stepfather) (collectively, Petitioners), and terminating Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), and (b).  After careful review, we are constrained to vacate the decree and remand for further proceedings.

On March 30, 2023, Petitioners filed a petition to involuntarily terminate Father's parental rights to Child, as well as a petition for Stepfather's adoption of Child.  Petitioners also filed notice of a termination hearing for July 26,

_____

* Former Justice specially assigned to the Superior Court.

2023. The petition and notice included no certificates of service. Father filed no response, and no attorney entered an appearance on Father's behalf.

On November 15, 2023, the trial court conducted a hearing on the termination petition.[1] As we discuss *infra*, Father did not participate in the hearing. At the hearing, Mother and Stepfather testified. Additionally, Marsha Ann Basco, Esquire, appeared as guardian *ad litem* and legal counsel for Child, but offered no testimony. At the conclusion of the hearing, the trial court granted the petition and involuntarily terminated Father's parental rights to Child. **Id.** at 33. The court entered its termination decree on November 16, 2023.

On December 12, 2023, Father, *pro se*, filed a notice of appeal that did not include a concise statement of matters complained of on appeal. **See** Pa.R.A.P. 1925(a)(2)(i) (requiring, in children's fast track cases, that the notice of appeal and concise statement must be simultaneously filed). Father additionally filed a petition to proceed *in forma pauperis*. On December 19, 2023, the trial court granted *in forma pauperis* status to Father and appointed Louis J. Mattioli, Esquire, as his counsel. Order, 12/19/23.

On January 2, 2023, this Court entered an order directing Father to file a concise statement of matters complained of on appeal no later than January 12, 2024. Father filed his counseled concise statement on January 4, 2024.

_____

[1] At the request of Petitioners, the hearing was continued from its originally scheduled date, July 26, 2023, to November 15, 2023..

Father additionally "reserve[d] the right to amend the instant Statement within a reasonable period of time after receipt and review of the requested transcript." Concise Statement, 1/4/24, ¶ 6. According to counsel, at the time he filed Father's initial concise statement, he

> [w]as … acting without the benefit of a transcript and without details pertaining to the matter. Accordingly, on February 6, 2024, said counsel, having received and reviewed a transcript, filed an Amended Concise Statement of Matters Complained of on Appeal.

Father's Brief at 6-7 n.3. The trial court filed an opinion on January 10, 2024. Father filed an amended concise statement on February 6, 2024.[2]

Father presents the following issues for our review:

1. Whether the Trial Court abused its discretion and/or committed an error of law in permitting the November 15, 2023[,] Hearing to proceed where Petitioners failed to demonstrate appropriate and/or actual service of Notice of said Hearing upon [Father].

2. Whether the Trial Court abused its discretion and/or committed an error of law in determining the parental rights of [Father] to [Child] should be terminated pursuant to 23 Pa.C.S.A. [§] 2511(a)(1) and (2).

---

[2] In children's fast track cases, there is no *per se* rule requiring that a defective notice of appeal be automatically quashed or dismissed. In *In re K.T.E.L.*, 983 A.2d 745 (Pa. Super. 2009), a panel of this Court opined that the failure to file a Rule 1925(a)(2)(i) concise statement contemporaneously with the notice of appeal constitutes "a defective notice of appeal," and we dispose of such matters on a case-by-case basis pursuant to *Stout v. Universal Underwriters Ins. Co.*, 421 A.2d 1047 (Pa. 1980). *In re K.T.E.L.*, 983 A.2d at 747. In *Stout*, our Supreme Court held that "[t]he extreme action of dismissal should be imposed by an appellate court sparingly, and clearly would be inappropriate when there has been substantial compliance with the rules and when the party [moving for quashal of the appeal] has suffered no prejudice." *Stout*, 421 A.2d at 1049. With this in mind, we decline to quash Father's appeal.

   3. Whether the Trial Court abused its discretion and/or committed an error of law in determining the tenets of 23 Pa.C.S.A. [§] 2511(b) have been satisfied and the best interests of [Child] served by terminating the parental rights of [Father.]

Father's Brief at 4 (issues reordered, numerical designations added).

Although Father raises four issues for our review, we only address the first issue because it compels our result. Father argues that the trial court improperly permitted the termination hearing to proceed, where Petitioners had failed to demonstrate Father received appropriate/actual service of the termination proceedings. Father's Brief at 8. Father argues,

   there was no evidence introduced to demonstrate [Father], an inmate incarcerated at [State Correctional Institution-Phoenix (SCI-Phoenix)] had notice of the proceeding or any meaningful opportunity whatsoever to participate and defend himself therein.

*Id.* (capitalization modified). Father contends the lack of notice implicates his right to due process guaranteed by the Fourteenth Amendment to the United States Constitution. *Id.*

Father acknowledges that notice, in termination of parental rights proceedings, is governed by Section 2513 of the Adoption Act[3] and Pennsylvania Orphans' Court Rule 15.6. Father's Brief at 9. As Father observes, Section 2513 requires at least ten days' notice "by personal service or by registered mail to his … last known address or by such other means as the court may require[.]" *Id.* at 9 (quoting 23 Pa.C.S.A. § 2513). Similarly,

---

[3] 23 Pa.C.S.A. § 2513.

Father argues that Orphans' Court Rule 15.6 requires notice by personal service, service at his residence on an adult member of the household, or by registered or certified mail to his last known address. *Id.* at 9-10 (citing Pa.O.C.R. 15.6). Father points out there is no evidence the termination petition was served upon Father by any means. *Id.* at 10.

Father further directs our attention to a statement made by Petitioners' counsel, Kurt Lynott, Esquire, at the termination hearing. According to Father, Attorney Lynott acknowledged that efforts to provide Father with a video link for the hearing "fell by the wayside and the prison became nonresponsive." *Id.* (quoting N.T., 11/15/23, at 3). Although Petitioners' counsel stated that he sent the hearing notice to a clearinghouse in St. Petersburg, Florida, Father claims there is nothing of record confirming that the notice was forwarded to Father. *Id.* at 11. Additionally, Father notes that the letter sent to St. Petersburg does not indicate that a petition was enclosed. *Id.*

Finally, Father argues there is no indication that Father received "actual" notice of the underlying proceedings. *Id.* at 12. Father points out that the certified mail receipt was signed by an unidentified third party. *Id.* According to Father, it is unclear whether the return receipt was signed by the "clearinghouse" in Florida or by a prison official at SCI-Phoenix. *Id.* Thus, Father argues, Petitioners failed to establish Father received actual notice of the proceedings. *Id.*

Petitioners counter that "counsel sent notice of the hearing to []
Appellant at the State Correctional Institution at Phoenix via certified and
regular United States First Class mail along with a copy of the Petition for
Involuntary Termination of Parental Rights on July 26, 2023." Appellees' Brief
at 3. Petitioners point out that this Court "has required a 'good faith' effort to
provide notice" in termination proceedings. *Id.* Petitioners argue, "The
correspondence containing the notice and petition was accepted and signed
for on August 21, 2023[,] at SCI[-]Phoenix." *Id.* They explain, "[n]either the
certified mail nor regular mail were returned to [their] counsel." *Id.*
Petitioners provided this information to the trial court at the November 15,
2023, hearing, and the trial court found proper service was effected. *Id.*

Petitioners further claim that "current notice was mailed to the address
as provided by the Department of Corrections along with [Father's]inmate
number that is required by the Department of Corrections when mailing to
inmates." *Id.* at 4. Petitioners point out that Father is still incarcerated with
the same prisoner number, and Father does not claim lack of notice of the
November 15, 2023, hearing. *Id.* at 4-5.

We review a decree terminating parental rights under the following
standard:

> The standard of review in termination of parental rights cases
> requires appellate courts to accept the findings of fact and
> credibility determinations of the trial court if they are supported
> by the record. If the factual findings are supported, appellate
> courts review to determine if the trial court made an error of law
> or abused its discretion. A decision may be reversed for an abuse

of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

This Court has explained,

issues involving proper service of notice in termination proceedings have a constitutional underpinning. The Fourteenth Amendment provides, in relevant part: "nor shall the State deprive any person of life, **liberty**, or property, without due process of law…." U.S. Const. Amend. 14 (emphasis added). Among the oldest of "fundamental liberty interests" recognized by the Constitution is a parent's right to make decisions concerning the care, custody, and control of his or her children. *In re D.C.D.*, … 105 A.3d 662, 667 (Pa. 2014); *see also Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (citing, *inter alia*, *Meyer v. Nebraska*, 262 U.S. 390, 399, 401, 43 S. Ct. 625, 67 L. Ed. 1042 (1923) ("liberty" protected by Due Process Clause includes right of parents to "establish a home and bring up children" and to "control the education of their own")).

Naturally then, it is well-settled that any individual whose parental rights are to be terminated must be afforded due process — that is, certain procedural safeguards. *See In re A.N.P.*, 155 A.3d 55, 66 (Pa. Super. 2017) (citing *In re Interest of K.B.*, 763 A.2d 436, 439 (Pa. Super. 2000)); *see also Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982) ("The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State."). "Due process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter." *A.N.P.*, 155 A.3d at 66 (citation omitted). Although we have explained that due process "is flexible and calls for such procedural protections as the situation

- 7 -

demands," we are unwilling to allow the termination of parental rights "without strict compliance with the procedures set forth by the Legislature...." *Id.* at 66, 68 (citing ***Appeal of J.T.M.***, 845 A.2d 861, 865 (Pa. Super. 2004)) (further citation omitted) (emphasis added).

*In re K.M.D.*, 261 A.3d 1055, 1059 (Pa. Super. 2021).

Father claims a due process violation based on his lack of notice of the termination proceeding. The Adoption Act governs the notice requirement in termination proceedings:

> **§ 2513. Hearing**
>
> ....
>
> **(b) Notice**.—At least ten days' notice shall be given to the parent or parents, putative father, or parent of a minor parent whose rights are to be terminated, **by personal service or by registered mail** to his or their last known address or by such other means as the court may require. A copy of the notice shall be given in the same manner to the other parent, putative father or parent or guardian of a minor parent whose rights are to be terminated....

23 Pa.C.S.A. § 2513(b) (emphasis added).

Our Orphans' Court Rules provide the following guidance, in relevant part:

> (a) Notice to every person to be notified shall be by personal service, service at his or her residence on an adult member of the household, or by registered or certified mail to his or her last known address. **If such service is unobtainable and the registered mail is returned undelivered, then:**
>
> ....
>
> > (2) in [involuntarily termination and adoption proceedings], further notice by publication or otherwise shall be given if required by general rule or special order

- 8 -

of the local Orphans' Court. If, after reasonable investigation, the identity of a person to be notified is unknown, notice to him or her shall not be required.

Pa.R.O.C. 15.6(a)(2) (emphasis added). As in all civil cases, the petitioners bear the burden of proving proper service by their affirmative acts. *Leight v. Lefkowitz*, 615 A.2d 751, 753 (Pa. Super. 1992).

"[N]either the Adoption Act nor the cases interpreting it require that a parent must be present in order for a court to grant" a termination petition. *In the Interest of D.F.*, 165 A.3d 960, 965 (Pa. Super. 2017). This Court also has long held that

> a trial court is not required to transport an incarcerated parent to a termination hearing in order to satisfy the needs of due process. However, if the incarcerated parent desires to contest the termination petition, the trial court must afford the incarcerated parent the ability to participate meaningfully in the termination hearing through alternate means.

*In re Adoption of J.N.F.*, 887 A.2d 775, 781 (Pa. Super. 2005) (citations omitted). However, a parent **must** receive notice of a termination hearing. *In the Interest of D.F.*, 165 A.3d at 965.

Our review of the record discloses the following. Petitioners filed their termination petition on March 30, 2023. The petition included no certificate of service. *See* Petition, 3/30/23. Petitioners additionally filed notice for the July 26, 2023 termination hearing. The notice included no certificate of service. Our review further discloses no return of service or other evidence indicating personal service or service by registered mail. *See* 23 Pa.C.S.A. § 2513(b).

Our review discloses an application for a continuance filed by Petitioners' counsel, Attorney Lynott. The application sought continuance of the July 26, 2023, termination hearing to November 15, 2023. Application, 7/27/23. The application includes no certificate of service, or any evidence of service of the continuance application or hearing notice on Father. Our review of the record discloses an undated letter purportedly notifying Father of the November 15, 2023, hearing. However, the letter was filed of record on November 20, 2023,[4] **after entry of the termination decree**. As such, it was not considered by the trial court at the termination hearing.

At the November 15, 2023, termination hearing, Attorney Lynott explained his attempts to effectuate service on Father and arrange his participation in the termination proceedings:

> [ATTORNEY LYNOTT:] Originally, [the termination hearing] was set for July 26th of this year.
>
> I had, candidly, with the court, as a court-appointed criminal attorney, I have a number that I can utilize through said mail to state prison inmates, which is their process because [Father] was not my client, and I could not utilize that number to serve him.
>
> [The Luzerne County Adoptions Clerk] and I were in communication with counselors at the prison to effectuate service, and had a video link setup for a July 26th hearing. That kind of fell by the wayside **and the prison became nonresponsive.**

---

[4] The letter has a return receipt indicating it was sent by certified mail to Father at SCI-Phoenix, via Smart Communications in St. Petersburg, Florida. Although the return receipt indicates delivery on August 21, 2023, it does not indicate whether the letter was delivered and signed for in Florida or at SCI-Phoenix. Father's signature is not on the return receipt. There is nothing of record evidencing service of the letter on Father.

- 10 -

So I requested to propose to have this hearing set. So it was moved from July 26th to today's date.

Since then[,] I provided notice to [Father] via Certified Mail as well as regular mail.

For purposes of the record, … [Father is] incarcerated at [SCI-] Phoenix. When sending, it goes to a clearinghouse in St. Petersburg, Florida.

I sent that notice. It was signed for and accepted at the prison on August 21st of this year.

And the notice and petition were sent to that facility which, if I can proffer an offer that was E.E.A.[5] for service.

THE COURT: … [S]o let's follow up. According to paragraph 26, the initial petition filed March 30th of this year, there was a belief, at that point in time, [Father] was at SCI Smithfield.

And then he was moved to SCI Phoenix?

[ATTORNEY] LYNOTT: Yes …. [Father] started at Camp Hill, then moved to Smithfield. The last check with the Department of Corrections had him at [SCI] Phoenix.

THE COURT: So I will acknowledge that services were made at SCI Phoenix back in August, August 21st of 2023. Today is November 15th.

N.T., 11/15/23, at 3-5 (emphasis and footnotes added).

As indicated above, Father, *in forma pauperis*, was not appointed counsel until after entry of the decree terminating parental rights. Our review discloses nothing of record supporting Attorney Lynott's claim that Father, an incarcerated individual, was served with the termination petition, application

---

[5] This term was not defined by Attorney Lynott.

for a continuance, or notice of the rescheduled hearing. Further, a statement by Petitioners' counsel that the "prison became nonresponsive" does not evidence that Father received actual notice of the hearing (or even the termination petition).

Under these circumstances, we conclude that the trial court violated Father's due process rights by conducting a termination hearing without appropriate notice to Father. *In re K.M.D.*, 261 A.3d at 1059 (stating, "we are unwilling to allow the termination of parental rights without strict compliance with the procedures set forth by the Legislature[.]" (internal quotation marks omitted)). Accordingly, we vacate the termination decree and remand for further proceedings, following appropriate notice to Father.

Decree vacated. Case remanded for further proceedings. Jurisdiction relinquished.


Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary


Date: 3/22/2024