J-S19031-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: A.M.R., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: D.S.R., JR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1687 MDA 2023 |

Appeal from the Decree Entered November 14, 2023
In the Court of Common Pleas of Tioga County Orphans' Court at No(s):
60 OC 2023

BEFORE:   DUBOW, J., BECK, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED: JULY 12, 2024**

D.S.R., Jr. ("Father") appeals from the decree entered November 14, 2023, in the Tioga County Court of Common Pleas, involuntarily terminating his parental rights to his daughter, A.M.R. ("Child"), born in December 2013.[1] After review, we affirm.

We summarize the relevant facts and procedural history, as follows.  The Tioga County Department of Human Services ("DHS") filed for emergency protective custody of Child on April 15, 2021, based upon allegations against Parents concerning substance abuse and domestic violence.  **See** N.T.,

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] As best we can discern from the certified record, the parental rights of Child's mother, J.P. ("Mother") (collectively with Father, "Parents"), have not been terminated, and she maintains supervised visitation with Child.  **See** N.T., 10/31/2023, at 14.

10/31/2023, at 45. The same day, the court granted DHS's petition and placed Child, then seven years old, in emergency foster care. *See id.* The following day, Child was returned to Father's care. However, three days later, she was removed again because Father forgot to pick her up from school. *See id.* at 45-46. Contemporaneous to Child's second removal, DHS found illicit substances and firearms on a table within Child's reach in Father's home and learned of concerns regarding Father's mental health. *See id.* at 46.

On May 6, 2021, the court adjudicated Child dependent and learned of additional concerns regarding educational neglect due to chronic truancy. *See id.* at 46-47. At a dispositional hearing on May 25, 2021, in furtherance of reunification, the court ordered Father to (1) submit to drug and alcohol assessments; (2) complete a psychological evaluation and follow any resulting recommendations for treatment; and, as best we can discern, (3) attend a parenting course. *See id.* at 48.

During the initial permanency review period, from May 2021 to August 2021, the caseworker at the time, Cody Losinger, testified that there were concerns that Father had sexually abused Child, or was "grooming" her for future abuse. *See id.* at 48-49. Primarily, Mr. Losinger testified that, during two visits to Father's home, he saw Child in Father's bed. *See id.* at 57, 60-61. On one occasion in December 2021, Child was in his bed wearing merely a t-shirt and underwear. *See id.* Mr. Losinger also noted that during visits he was perturbed by Father's physical contact with Child. *See id.* at 49. He

observed Father touching Child with inappropriate affection, consistently sitting Child on his lap, and rubbing Child's back, arms, and legs. *See id.* at 48-49. Mr. Losinger reported that he discussed the concerns with Father, who "did tone it down." *See id.*

On November 23, 2021, the court found Father to be in substantial compliance with the above-noted objectives. The court also concluded that Father had made substantial progress in alleviating the circumstances that brought Child into care because he was meeting with his service providers, had completed a psychological evaluation,[2] and had obtained employment. *See id.* at 51-55. Therefore, the court ordered physical custody of Child to revert to Father. The court, however, also entered additional orders which required Father to leave Child with approved caregivers and permitted DHS unfettered access to Child. *See id.* at 52.

In March 2022, the court terminated judicial supervision of the family. Nonetheless, Mr. Losinger reported that DHS opted to keep the case open to ensure Child's safety and well-being. *See id.* at 55. Eventually, Mr. Losinger averred that DHS once again began receiving reports regarding Child's truancy, lack of appropriate parental supervision, and indications that Father had relapsed. *See id.* at 56. When approached by DHS, Mr. Losinger reported

_____

[2] The psychological evaluation concluded that Father should engage in individual therapy. Father never complied with the recommendation. *See* N.T., 10/31/2023, at 53-54.

- 3 -

that Father became aggressive and would not allow Mr. Losinger access to Child. *See id.* In August 2022, Father's attorney sent a letter to DHS indicating his unwillingness to continue participating in services. *See id.* at 57-58. DHS briefly visited Father one more time on September 15, 2022, and subsequently closed the case. *See id.* at 59-60.

Thereafter, on March 20, 2023, DHS was once again made aware of truancy concerns for Child, by then nine years old, as she had already missed more than thirty-seven school days, most of them "unlawful." *See id.* at 73; *see also* DHS Exhibit 7, Child's Attendance Portfolio. On March 27, 2023, DHS received a Child Protective Services ("CPS") report. *See* N.T., 10/31/2023, at 73. The report alleged that Father perpetrated sexual abuse against Child, specifically, that Mother walked into Father's bedroom and witnessed Child performing oral sex upon him. *See id.*; *see also* Order of Adjudication and Disposition, 5/30/2023.[3] The same day, DHS filed a petition for emergency protective custody, and Child was removed from Father's care. *See* N.T., 10/31/2023, at 72. In order to secure Child's removal, DHS sought police assistance because Father became belligerent and was known to have various firearms in his home. *See* Order of Adjudication and Disposition, 5/30/2023. At this time, DHS placed Child in an undisclosed foster home due to ongoing safety concerns related to Father. *See* N.T., 10/31/2023, at 72.

---

[3] The order of adjudication and disposition was entered into evidence at the termination of parental rights hearing as DHS's Exhibits 1.

At a shelter care hearing held on March 30, 2023, the court confirmed Child's placement and ordered that Father was not permitted to attend any educational meetings, dental, or medical appointments related to Child. **See id.** at 73.

On May 30, 2023, the court adjudicated Child dependent following a three-day trial. Furthermore, the court found that Child was the "victim of child abuse as defined by 23 Pa.C.S. § 6303, in the form of sexual assault perpetrated upon her by [Father.]" Order of Adjudication and Disposition, 5/30/2023. On the same date, the court entered an order finding aggravated circumstances as to Father pursuant to 42 Pa.C.S. § 6341(c.1)[4] and ordered that "[n]o efforts are to be made to preserve the family and reunify the Child with the Father." Aggravated Circumstance Order, 5/30/2023.

Separately, DHS investigated the CPS report allegations of Child abuse against Father. **See** N.T., 10/31/2023, at 78. Father was uncooperative during the investigation. Ultimately, the March 27, 2023 CPS report was deemed founded in June 2023. **See id.**

---

[4] **(c.1) Aggravated circumstances.--**If the county agency or the child's attorney alleges the existence of aggravated circumstances and the court determines that the child is dependent, the court shall also determine if aggravated circumstances exist. If the court finds from clear and convincing evidence that aggravated circumstances exist, the court shall determine whether or not reasonable efforts to prevent or eliminate the need for removing the child from the home or to preserve and reunify the family shall be made or continue to be made and schedule a hearing as required in section 6351(e)(3) (relating to disposition of dependent child).

On June 14, 2023, DHS filed a petition for the involuntary termination of Father's parental rights pursuant to 23 Pa.C.S. § 2511 (a)(1), (2), (5), (8), (10), and (b). The orphans' court held evidentiary hearings on October 31, 2023, and November 7, 2023.[5] Child, then nine years old, was represented by a separate guardian *ad litem* ("GAL") and legal interest counsel.[6] **See** 23 Pa.C.S. § 2313(a). Father was present for the hearings but did not testify. DHS presented the testimony of Mr. Losinger; Denise Feger, Ph.D., Child's therapist;[7] Jenny Farrer, caseworker for the family during Child's second adjudication of dependency; and Rebecca Dizon, Child's third grade teacher. DHS additionally proffered several exhibits which were admitted without objection.

---

[5] The Honorable George W. Wheeler presided over these hearings as well as the May 2023 hearings wherein the court adjudicated Child dependent and entered an order finding aggravated circumstances as to Father pursuant to 42 Pa.C.S. § 6341(c.1).

[6] Our Supreme Court has mandated that this Court conduct *sua sponte* review to ensure that trial courts have properly appointed counsel to represent the legal interests of children in contested involuntary termination proceedings in conformity with 23 Pa.C.S. § 2313(a). **See In re Adoption of K.M.G.**, 240 A.3d 1218, 1234-36 (Pa. 2020). Here, the court properly appointed counsel to represent Child's legal interests.

Both the GAL and legal interest counsel argued in favor of termination at the conclusion of the November 7th hearing. **See** N.T., 11/7/23, at 11.

[7] The court certified Dr. Feger as an expert in trauma and attachment therapy. **See** N.T., 10/31/2023, at 7.

Dr. Feger conducted two trauma evaluations of Child and served as her individual therapist. *See id.* at 4. Dr. Feger's initial evaluation occurred in August 2021. *See* N.T., 10/31/2023, at 8. After Child was removed from Father's care the second time, she completed another evaluation, over four sessions, in May 2023. *See id.* at 8-10. She reported that the concerns from her initial evaluation remained the same in her reassessment. *See id.* at 10-11. She averred that during her second evaluation, Child was guarded and defensive initially. *See id.* at 10. However, as therapy sessions continued and rapport was built, Child became more open. *See id.* at 20. Dr. Feger diagnosed Child with post-traumatic stress disorder and general anxiety disorder. *See id.* at 19. Dr. Feger also reported that Child confirmed that Mother's reports of sexual abuse were accurate. *See id.* at 20. Child also made several other disclosures to Dr. Feger which resulted in three subsequent ChildLine reports. *See id.* Dr. Feger further related that Child is fearful of Father and that he may try to take her from her foster home. *See id.* at 15.

Ms. Dizon testified that prior to her removal from Father's care, Child consistently had dark bags under her eyes and was often tired. *See id.* at 98. Ms. Dizon stated that Child told her she could not sleep when she was living with Father. *See id.* After she was placed, Ms. Dizon testified that the bags under her eyes disappeared, and Child appeared happy and secure. *See id.* Ms. Dizon also noted that Child's attendance improved while in the care of her

foster family. ***See id.*** As a result, Child's academic performance "soared." ***See id.*** at 99-100.

By decree dated November 9, 2023, and entered November 14, 2023, the court involuntarily terminated Father's parental rights to Child pursuant to 23 Pa.C.S. § 2511(a)(2), (10), and (b). The court provided the rationale for its decision in an opinion accompanying the decree. Father timely filed a notice of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). In lieu of a formal Rule 1925(a) opinion, the orphans' court submitted a letter referring this Court to its opinion accompanying the decree.

On appeal, Father presents the following issues for review:

1. Did the orphans' court abuse its discretion and/or err as a matter of law in terminating Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(10)?

2. Did the orphans' court abuse its discretion and/or err as a matter of law in terminating Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2)?

3. Did the orphans' court abuse its discretion and/or err as a matter of law by failing to grant a continuance as requested by Father during the first termination hearing?

Father's Brief at 5 (cleaned up).

Our standard of review in this context is well-settled:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the

- 8 -

trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

***Interest of M.E.***, 283 A.3d 820, 829-30 (Pa. Super. 2022) (internal citations and quotation marks omitted).

The involuntary termination of parental rights is governed by 23 Pa.C.S. § 2511 of the Adoption Act, which necessitates a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct that may warrant termination pursuant to Section 2511(a)(1)-(11). ***M.E.***, ***supra*** at 830. If the court determines that a petitioner has established grounds for termination under at least one of these subsections by "clear and convincing evidence," the court then assesses the petition under Section 2511(b), which focuses primarily upon the child's developmental, physical, and emotional

needs and welfare. *Id*. at 830 (citing *In re T.S.M.*, 620 Pa. 602, 628, 71 A.3d 251, 267 (2013)); *see also* 23 Pa.C.S. § 2511(b). This Court "need only agree with [the trial court's] decision as to any one subsection of [Section 2511(a) in addition to Section 2511(b),] in order to affirm the termination of parental rights." *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

In the case *sub judice*, the court terminated Father's parental rights to Child pursuant to 23 Pa.C.S. § 2511(a)(2), (10), and (b). Instantly, we analyze the court's termination decree pursuant to Section 2511(a)(10) and (b), which provide as follows:[8]

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (10) The parent has been found by a court of competent jurisdiction to have committed sexual abuse against the child or another child of the parent based on a judicial adjudication as set forth in paragraph (1)(i), (ii), (iii) or (iv) or (4) of the definition of "founded report" in section 6303(a) (relating to definitions) where the judicial adjudication is based on a finding of "sexual abuse or exploitation" as defined in section 6303(a).
>
> . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated

---

[8] Based on this disposition, we do not consider Father's claim concerning Section 2511(a)(2). *See B.L.W., supra.*

solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(10), (b).

Section 6303(a) defines a "founded report" as follows:

(1) There has been a judicial adjudication based on a finding that a child who is a subject of the report has been abused and the adjudication involves the same factual circumstances involved in the allegation of child abuse. The judicial adjudication may include any of the following:

(i) The entry of a plea of guilty or nolo contendere.

(ii) A finding of guilt to a criminal charge.

(iii) A finding of dependency under 42 Pa.C.S. § 6341 (relating to adjudication) if the court has entered a finding that a child who is the subject of the report has been abused.

(iv) A finding of delinquency under 42 Pa.C.S. § 6341 if the court has entered a finding that the child who is the subject of the report has been abused by the child who was found to be delinquent.

. . .

(4) A final protection from abuse order has been granted under section 6108 (relating to relief), when the child who is a subject of the report is one of the individuals protected under the protection from abuse order and:

(i) only one individual is charged with the abuse in the protection from abuse action;

(ii) only that individual defends against the charge;

- 11 -

(iii) the adjudication involves the same factual circumstances involved in the allegation of child abuse; and

(iv) the protection from abuse adjudication finds that the child abuse occurred.

23 Pa.C.S. § 6303(1) and (4).

Father contends that while the orphans' court found that Child had been the victim of child abuse, the finding was related to aggravated circumstances, not to the dependency adjudication. *See* Father's Brief at 10. He argues that the adjudication of dependency occurred "not because [C]hild was sexually abused but because [C]hild was without proper care or control, subsistence, or education as required by law, or other care or control necessary for her physical, mental, or emotional health or morals." *Id.* Father's contention is belied by the certified record.

In determining that DHS met its burden pursuant to Section 2511(a)(10), the orphans' court found the following:

The [c]ourt [o]rder of May 30, 2023, [] specifically finds that ". . . [Child] has in fact been the victim of child abuse in the form of sexual assault perpetrated upon her by [Father] . . . ." The evidence presented at the adjudicatory hearing before the dependency court, resulted in an adjudication of dependency. The evidence included that [C]hild's mother observed [C]hild engaging in oral sex with [Father]. No appeal was taken from the Order of Adjudication and Disposition, nor from the finding that the report of abuse was founded. [DHS] has established, by clear and convincing evidence, grounds pursuant to 23 Pa.C.S. § 2511(a)(10).

Orphans' Court Opinion, 11/9/2023, at 5. Contrary to Father's arguments, an integral part of the court's findings in the order of adjudication and disposition included Father's sexual abuse of Child. **See** Order of Adjudication and Disposition, 5/30/2023, at 5. Father did not appeal the court's findings at the time, did not object to the court entering the Order of Adjudication and Disposition as DHS's Exhibit 1, and even admits that "the court found that [Child] had in fact been the victim of child abuse in the form of sexual assault perpetrated upon her by Father. . . ." Father's Brief at 10. Indeed, the orphans' court provided detailed factual findings and ultimately made its finding of dependency based on Father's sexual abuse of Child. Accordingly, we discern no abuse of discretion by the court in terminating Father's parental rights pursuant to Section 2511(a)(10). Thus, Father's first issue fails.

We observe that Father failed to assert an error regarding Section 2511(b) in his statement of questions involved in his brief. **See** Pa.R.A.P. 1925(b)(4)(vii), 2116(a). Notably, Father also failed to proffer any argument in his brief regarding subsection (b). Therefore, Father has waived any claim concerning it. It follows that we do not review the decree with respect to Section 2511(b). **See In re M.Z.T.M.W.**, 163 A.3d 462, 466 (Pa. Super. 2017) (citation omitted) (finding that, because the appellant-mother "failed to include a challenge to Section 2511(b) in her statement of questions involved and concise statements that issue is also waived.[]"); **see also In re W.H.**, 25 A.3d 330, 339 n.3 (Pa. Super. 2011) ("[W]here an appellate brief fails to

provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." ***In re A.C.***, 991 A.2d 884, 897 (Pa. Super. 2010) (quoting ***Commonwealth v. Johnson***, 985 A.2d 915, 924 (Pa. 2009))).[9]

Finally, we turn to Father's last issue, whether the court erred in denying his request for a continuance during the October 31, 2023 termination of parental rights hearing. This Court has stated that "[t]he matter of granting or denying a continuance is within the discretion of the [orphans'] court." ***In Interest of D.F.***, 165 A.3d 960, 964 (Pa. Super. 2017). We will not disturb an orphans' court's determination absent an abuse of discretion. ***See id.*** at 965. In this context, "[a]n abuse of discretion is more than just an error in judgment and, on appeal, the [orphans'] court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the results of partiality, prejudice, bias, or ill-will." ***Id.***

In the case *sub judice*, Father verbally requested a continuance following the completion of DHS's first witness. ***See*** N.T., 10/31/2023, at 39-42. He contends that "[s]urely a brief continuance to secure witnesses [for a

---

[9] Even if not waived, we would conclude that the court did not abuse its discretion with respect to Section 2511(b). Indeed, Dr. Feger testified that Child fears Father and wants nothing to do with him. ***See*** N.T., 10/31/2023, at 15, 20-21. Further, Ms. Farrer testified that Child's bond is with her foster mother who meets all of her needs. ***See id.*** at 85-86.

termination of parental rights case] would not have impacted any party other than further disadvantaging [F]ather." Father's Brief at 15.

During the hearing on October 31, 2023, Father requested a continuance because he had asked his counsel to file subpoenas for numerous witnesses "through this whole case[.]" N.T., 10/31/2023, at 39-40. In response, his counsel advised that Father did not request any witnesses until the Thursday before the October 31, 2023 termination hearing. *See id.* at 41. Ultimately, on the record in open court, the orphans' court denied Father's request because the proceeding had "been scheduled for a long period of time. This has already been continued once. . . . We certainly will have breaks and if there are witnesses that you and your attorney believe should be here, I would be sensitive to a request to do that." *Id.* at 41-42. Ultimately, later in the proceeding, the orphans' court continued the case until November 7, 2023.

Based on our review of the record, it is clear that Father had abundant time prior to the proceeding to subpoena witnesses, and even after the court granted a continuance, he still did not produce any witnesses. Given the latitude courts are provided in determining whether a continuance should be granted, we discern no abuse of discretion. *See D.F., supra*.

Based on the foregoing, we affirm the decree terminating Father's parental rights.

Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>07/12/2024</u>